**Mark Allen WISEHART, Appellant (Petitioner Below),**

v.

**STATE of Indiana, Appellee (Respondent Below).**

No. 48S00–9005–PD–378.

Supreme Court of Indiana.

March 19, 1998.

Rehearing Denied July 13, 1998.

tence of death.[5] We earlier affirmed Wisehart's direct appeal of these convictions and sentence. *Wisehart v. State,* 484 N.E.2d 949 (Ind.1985), *cert. denied* 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986).

The crimes of which Wisehart was convicted involved the beating and stabbing of an elderly woman, Marjorie Johnson, in her apartment and the taking of a small amount of money. Wisehart was convicted largely on the strength of a detailed confession which we ruled on direct appeal was properly admitted at trial. Of importance to issues facing us in this appeal is that the confession gave no suggestion that Wisehart had any accomplices in the crimes and that all of the other evidence linking Wisehart to the crimes was circumstantial. We refer the reader to our earlier opinion for additional details of the facts.

## Discussion

### I

Wisehart's most substantial claim of entitlement to post-conviction relief is grounded in a claim of "newly-discovered evidence." He argues that while he was convicted and sentenced on the theory that he acted alone, new evidence presented at his post-conviction hearing shows that he had two accomplices, one of whom was the primary actor in the murder.

In order for newly-discovered evidence to merit relief, the claimant must establish each of the following: (1) that the evidence was not available at trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; and

Susan K. Carpenter, Public Defender, Thomas C. Hinesley, Deputy Public Defender, Janet S. Downling, Special Assistant, J. Jeffreys Merryman, Jr., Deputy Public Defender, Indianapolis, for Appellant.

Pamela Carter, Attorney General, James A. Joven, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

We review and affirm a post-conviction court's denial of Mark Allen Wisehart's petition for post-conviction relief.

## Background

Petitioner Mark Allen Wisehart appeals the denial of post-conviction relief with respect to his convictions for Murder,[1] Robbery,[2] Burglary,[3] and Theft[4] and his sen-

1. Ind.Code § 35–42–1–1(2)(1982). Unless otherwise indicated, references to Title 35 of the Indiana Code refer to the version published in the 1982 Edition of the Code which contains the substantive criminal statutes and the death penalty statute in effect at the time the crimes at issue were committed.

2. Ind.Code § 35–42–5–1.

3. Ind.Code § 35–43–2–1.

4. Ind.Code § 35–43–4–2.

5. Ind.Code § 35–50–2–9.

(9) that it will probably produce a different result. *Fox v. State,* 568 N.E.2d 1006, 1007 (Ind.1991).

## A

During the post-conviction hearing, there was testimony from one Robert Disney that he, one Tony Fuqua, and Wisehart had set out to burglarize the victim's apartment and when she was unexpectedly found to be home, he saw Wisehart and Fuqua physically attack her and Fuqua (but not Wisehart) stab her several times.

More specifically, Disney testified at the post-conviction hearing that when the three-some entered the victim's apartment, Wisehart grabbed the victim by the arm, spun her around, and put his arm around her neck in a choke hold. Disney testified further that when the victim started to scream, Wisehart said, "[S]omebody shut her up," and Fuqua then punched her in the stomach. (R. at 1386.) [6] Disney continued that the victim then fell to the floor and Wisehart kicked her; that he saw Fuqua but not Wisehart stab her several times; and that after the stabbing, Wisehart directed Fuqua to "get rid of those items" Fuqua used to stab the victim. Disney testified that he himself never touched the victim, that he "just couldn't deal with whatever it was that was going on," and left during the attack.

Officer Moberly, a police detective with major responsibility for investigating the crime, testified at the post-conviction hearing that Wisehart had verified most of the details of a substantially similar account given by Disney in an interview some years after Wisehart's conviction. Moberly also testified that he had come to believe Disney's account.

Also in evidence at the post-conviction hearing was the transcript from Wisehart's trial and police reports related to the investigation of the crimes.[7] This evidence, together with the Disney and Moberly testimony, contains the following additional information relevant to this claim:

1. Prior to his trial, Wisehart confessed to the crimes and accepted sole responsibility for them. He specifically admitted stabbing the victim and did not give any indication but that he had acted alone.

2. Again prior to Wisehart's trial, Fuqua was arrested and charged with assisting a criminal on the basis that he had admitted being outside the apartment while Wisehart was inside committing the crimes.

3. Again prior to trial, Disney was interviewed on several occasions about possible involvement in the crimes. Disney denied involvement and was not considered a suspect.

4. Both Disney and Fuqua were on the State's witness list for trial but neither was called.

5. At trial during the guilt phase, Wisehart presented testimony from Officer Moberly and from another police officer involved in the investigation, both of whom indicated that it was possible that other people were involved in the crime.

6. During the trial but outside the presence of the court, Wisehart was interviewed by the police and told them that he, one Gregory Scott Johnson (no relation to the victim) and a third person had committed the crimes and that it had been Johnson who had stabbed the victim to death.[8] During this session, Wisehart apparently inadvertently

---

**6.** The record is referred to in this opinion in three ways. The record in the post-conviction court is denominated as "R;" the record in the trial court as "T.R.;" and the supplemental record containing the record of jury *voir dire* at trial as "S.T.R."

**7.** The police reports were admitted "as a business record pursuant to Indiana Rule of Evidence 803(8)." Actually, Evid.R. 803(8) covers *public* records; Evid.R. 803(6) covers *business* records. We note that investigative reports by police and other law enforcement personnel are not rendered admissible by Evid.R. 803(8); *see*

*Bacher v. State,* 686 N.E.2d 791, 794 n. 4 (Ind. 1997); except when offered by an accused in a criminal case. Evid.R. 803(8)(a). Wisehart offered the reports here.

**8.** This unusual session took place with the active participation of Wisehart's trial counsel. It occurred after Johnson had testified for the State. The unmistakable impression of this session is that Wisehart was trying to get even with Johnson for testifying against him. Wisehart makes no contention now that Johnson was involved in these crimes.

once indicated that the third person was Disney.

7. During the penalty phase, Wisehart's counsel attempted to present testimony through Moberly that other people may have been involved in the crime as a mitigating circumstance. However, the trial judge refused to allow such evidence to be presented to the jury [9] and no evidence regarding the possible involvement of others was presented to the jury during the penalty phase. During defense counsel's offer to prove in this regard, Officer Moberly indicated that it was now his belief that no one else was involved in the crimes and Dr. Joy, a defense expert witness, testified that Wisehart had told him others were involved. At the sentencing hearing, a defense investigator testified that Wisehart had told the investigator that others were involved in the crime and that Wisehart never struck the victim.[10]

8. After Wisehart was convicted and sentenced, the Anderson Police Department continued investigating the crimes. The record shows that during this investigation, Moberly spoke with Disney who again denied involvement. At the post-conviction hearing, Moberly testified that some months later he again spoke to Disney who changed his story and gave Moberly an account substantially the same as that which Disney presented at the post-conviction hearing. The record contains a statement signed by Disney containing an account substantially the same as that which Disney presented at the post-conviction hearing.[11] Moberly testified that he then visited Wisehart in prison [12] and Wisehart "verified" Disney's account. Disney's account remains essentially unchanged from that point forward. But the record indicates that several months later, Moberly again visited Wisehart in prison and Wisehart returned to his account that Johnson was his accomplice and that Johnson had done the stabbing.

9. The record contains a police report dated July 31, 1985, in which Moberly wrote that the Madison County prosecutor had decided not to pursue charges against Fuqua because, "although there was enough to sustain a grand jury indictment, he felt that once in trial, there would not be enough for a conviction as the state could only present Robert Disney, and Fuqua probably would testify and it would be down to which witness would be the most credible. It was felt that because of Disney's appearance and background he would not be the most credible." Moberly also wrote: "This case is now sus-

---

9. The State objected to the use of this evidence on grounds that it was not relevant to any sentencing issue. In arguing in support of using the evidence, defense counsel said, "[A]s the prosecutor and Officer Moberly both know, ... there are other people involved in this case, as we've told them. Their evidence clearly shows that there [were].... And while true, it has absolutely nothing to do with whether this man is guilty or innocent of the crime of murder as related by the statute, it definitely has something to do with sentencing." (R. at 2336.) The trial court sustained the objection on grounds that the evidence did not rise to the level of a mitigating circumstance under either Ind.Code § 35–50–2–9(c)(4) or (5). Those provisions establish that the sentencer may consider as mitigating circumstances that (1) the defendant was an accomplice in the murder which was committed by another person and in which the defendant's participation was relatively minor or (2) the defendant acted under the substantial domination of another person. The trial court concluded that the mere participation of others in the crimes did not rise to the level required by either mitigator.

10. It appears that this witness was referring to Wisehart's attempt to implicate Johnson, dis-

cussed in paragraph 6, *supra*, and the accompanying footnote.

11. It appears that this is the account Moberly testified that Wisehart "verified" although the meeting between Moberly and Wisehart appears to have occurred a few days before the date on Disney's statement. We do not find this discrepancy, if it is one, significant.

12. Before talking with Wisehart, Moberly stated that Mr. Lawler, the prosecutor, was advised of the plan to talk with Wisehart, but was told that the purpose of the interview was to question Wisehart about *accomplices and not about* Wisehart's guilt or innocence since that had already been determined. Moberly also stated that none of Wisehart's attorneys were contacted before this interview. Wisehart's direct appeal was still pending at this time and Wisehart now argues— without authority—that the State's duty to disclose exculpatory evidence continues after trial. Wisehart's failure to present any authority on this point is telling but we refrain from holding that the State never has such a duty. It is sufficient to hold that there was no duty here both since the information itself was not exculpatory and it was communicated to Wisehart.

pended: Mark Wisehart is on death row. It is known now that Fuqua and Disney were the other co-conspirators. Fuqua inflicted most of the damage on the victim. Never once have we uncovered any evidence that Wisehart was not involved. Disney will remain to have immunity should he ever testify for the state." (R. at 1256.)

10. As indicated at the outset of this section, Disney and Moberly testified at the post-conviction hearing.

## B

Wisehart contends that the evidence that Disney and Fuqua were involved in the crimes and that Fuqua stabbed the victim constitutes "newly discovered evidence," entitling him to have both his convictions and death sentence set aside. The post-conviction court rejected these claims, finding that this evidence was insufficient to entitle Wisehart to relief from either his convictions or his sentence. As discussed at the outset of this part I, *Fox* sets forth nine stringent requirements, each of which a claimant must satisfy in order to obtain relief on grounds of newly discovered evidence.[13] *Fox,* 568 N.E.2d at 1007. We conclude that Wisehart has not satisfied at least three of the *Fox* requirements. He has not established that the evidence was not available at trial. He has not established that due diligence was used to discover this evidence in time for trial. And he has not established that this evidence would probably produce a different result on re-trial.

### B–1

■ By definition, a claim for relief based on newly discovered evidence must not be based on evidence or information of which the claimant had knowledge prior to trial. *See United States v. Calderon,* 127 F.3d 1314, 1351 (11th Cir.1997), *cert. denied sub nom Noa v. United States,* —— U.S. ——, 118 S.Ct. 1090, —— L.Ed.2d —— (1998). It has long been the rule in this state that "[a] defendant in possession of evidence, who fails

to present the evidence at trial, cannot use such evidence as a basis for a new trial following an unfavorable verdict." *Fleener v. State,* 274 Ind. 473, 479, 412 N.E.2d 778, 782 (1980) (quoting *Riddle v. State,* 273 Ind. 112, 116–17, 402 N.E.2d 958, 961 (1980)). *See Vacendak v. State,* 264 Ind. 101, 109, 340 N.E.2d 352, 357 (1976) (citing *DeShone v. State,* 207 Ind. 380, 386, 193 N.E. 223, 225 (1934)).

■ What Wisehart claims is "newly discovered" is Disney's account placing Fuqua and Disney in the victim's home with Wisehart at the time the crimes were being committed. Wisehart does not claim that he was not present. As such, to the extent that Wisehart claims that Disney's testimony is accurate, Wisehart knew prior to trial about Fuqua's and Wisehart's relative roles in the crimes because he was there with them. The evidence that Disney and Fuqua were involved in the crimes and that Fuqua stabbed the victim is not newly discovered evidence under *Fox* because, if it is true, it constitutes evidence or information of which Wisehart had knowledge prior to trial.

### B–2

■ The Fifth Circuit has observed that "newly available" evidence is not necessarily synonymous with "newly discovered" evidence. *United States v. Metz,* 652 F.2d 478, 480 (5th Cir.1981). This is particularly the case when a witness comes forward with exculpatory testimony after trial has been completed. As *Fox* makes clear, evidence is not "newly discovered" if due diligence was not used to discover it in time for trial. *Fox,* 568 N.E.2d at 1007. We have rejected as not meeting the *Fox* requirements newly available evidence consisting of post-trial exculpatory testimony from a co-defendant, accomplice or alibi witness where there was no effort made to produce it at trial. *See, e.g., James v. State,* 613 N.E.2d 15, 25 (Ind.1993); *Bradburn v. State,* 425 N.E.2d 144, 146 (Ind.

---

**13.** The federal courts use similar criteria. *See, e.g., Jarrett v. United States,* 822 F.2d 1438, 1445 (7th Cir.1987). Judge Ripple sets forth the rationale for these requirements: "Because of the importance accorded to considerations of repose, regularity of decision-making and conservation of scarce judicial resources, courts exercise 'great caution' in setting aside a verdict reached after fully-conducted proceedings." *United States v. Kamel,* 965 F.2d 484, 490 (7th Cir.1992) (footnote citing cases omitted), *habeas corpus denied,* 1997 WL 639231 (N.D.Ill.1997).

1981). (*James* and *Bradburn* also stand for the proposition discussed in subsection B–1, *supra.*)

█ Prior to trial, Fuqua had been arrested and charged with assisting Wisehart. Disney had been interviewed. Both Fuqua and Disney were on the State's witness list for trial. Disney had been identified by Wisehart (in the out of court police interview during trial) as having been involved. And there was evidence and argument during trial that others were involved. The evidence that Disney and Fuqua were involved in the crimes and that Fuqua stabbed the victim is not newly discovered evidence under *Fox* because, given that Fuqua and Disney had been identified prior to trial but were not called as witnesses, due diligence was not used to discover the evidence.

### B–3

█ Under *Fox*, newly discovered evidence warrants relief only if the evidence will probably produce a different result. *Fox*, 568 N.E.2d at 1007; *Bradford v. State*, 675 N.E.2d 296, 302 (Ind.1996), *reh'g denied.* As to Wisehart's convictions, the only direct evidence at trial of Wisehart's involvement in the crime was his confession. The Disney statement places Wisehart in the apartment, holding the victim in a headlock, and directing Fuqua to silence her. It has Wisehart kicking the victim and directing Fuqua to dispose of the murder weapons. If anything, the Disney testimony would have made Wisehart's conviction of the crimes more likely.

█ As to the death sentence, our death penalty statute contains several statutory mitigating circumstances that are relevant here. Mitigating circumstances providing that the defendant's participation was relatively minor and that the defendant acted under the substantial domination of another person [14] are in no way established by this evidence. There was nothing in Disney's testimony to suggest that Wisehart's participation was other than major. As to substantial domination, Wisehart's reported orders to Fuqua to silence the victim and to dispose of the murder weapons point in the opposite direction.[15] Another statutory mitigator— the defendant was an accomplice in a murder committed by another person [16]—also is not established by Disney's testimony. One who holds a victim in a choke hold and directs another to silence the victim shares full culpability for the killing even if the other strikes the fatal blow. *See Ajabu v. State*, 693 N.E.2d 921, 937 (Ind.1998); *Townsend v. State*, 533 N.E.2d 1215, 1227 (Ind.1989); *Resnover v. State*, 460 N.E.2d 922, 935 (Ind. 1984), *cert. denied* 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160 (1984). The kick and the directions on disposing of the weapons reinforce this conclusion.

The death penalty statute also permits the sentencer to take into account, in addition to the mitigating circumstances specified in the statute, any other circumstances appropriate for consideration. Ind.Code § 35–50–2–9(c)(7). It is here that Wisehart directs his argument with particular force. He contends that even if he was a principal actor in the murder, he was entitled to have the sentencer take into account testimony to the effect that he was not the only principal actor and that he personally did not stab the victim. Compared to the story presented at trial (Wisehart's own confession), the Disney account does not have Wisehart doing the stabbing [17] but does add the following details: that Wisehart brought two others along to perpetrate the crime, that he held the victim in a choke hold, that he directed another to silence her, that he threw her to the floor and kicked her, and that he directed another to dispose of the weapons used to stab her. We do not find the net effect of the Disney account to reduce Wisehart's involvement to

---

**14.** Ind.Code §§ 35–50–2–9(c)(4) & (5).

**15.** This evidence also points in the opposite direction of Wisehart's claim, which we reject, that he is entitled to post-conviction relief because his sentence is disproportionate since he was not the "leading personality" in the commission of the crime.

**16.** Ind.Code § 35–50–2–9(c)(4).

**17.** Actually, the Disney account does not exonerate Wisehart of any stabbing. It only reports that Disney did not see Wisehart do any stabbing before Disney left—which Disney testified was during the attack, *i.e.*, before the attack was over.

the point that this evidence can be said probably to produce a different result.

## II

Wisehart's second most substantial claim of entitlement to post-conviction relief is that he was deprived of the effective assistance of counsel to which he was entitled when his trial counsel pursued contradictory theories of defense. While framed in several different ways, the gist of Wisehart's claim is that it was incompetent and prejudicial for his lawyer to argue at the same time that Wisehart was innocent and that he was insane. Wisehart presses his point with the following arguments. First, the jury simply could not accept Wisehart's lawyer's argument that Wisehart did not commit the crime when an insanity defense suggests that a defendant committed the crime but was not responsible for his actions. Second, the jury's ability to assign mitigating weight to Wisehart's mental condition was significantly undermined (if not logically excluded) by his lawyer's contention that he had not committed the crime. Third, any hope that Wisehart's lawyer had to make strategic use of the two defenses was undermined by counsel's alleged failure to explain the reasons for the apparent contradictions and by counsel's alleged failure to advance Wisehart's mental condition as a mitigating circumstance.

■■■ Indiana analyzes claims of ineffective assistance of counsel according to the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Lowery v. State*, 640 N.E.2d 1031, 1041 (Ind.1994). First, we require the defendant or petitioner to show that, in light of all the circumstances, the identified acts or omissions of counsel

were outside the wide range of professionally competent assistance. *Id.* This showing is made by demonstrating that counsel's performance was unreasonable under prevailing professional norms. *Id.* (citing *Turner v. State*, 580 N.E.2d 665, 668 (Ind.1991)). Second, we require the defendant or petitioner to show adverse prejudice as a result of the deficient performance. This showing is made by demonstrating that counsel's performance was so prejudicial that it deprived the defendant or petitioner of a fair trial. *Lowery*, 640 N.E.2d at 1041. We will conclude that a fair trial has been denied when the conviction or sentence has resulted from a breakdown of the adversarial process that rendered the result unreliable. *Id.* (citing *Best v. State*, 566 N.E.2d 1027, 1031 (Ind. 1991)). *See also Sanchez v. State*, 675 N.E.2d 306, 310 (Ind.1996).

### A

■■■ We have never examined whether the simultaneous presentation of innocence and insanity defenses constitutes ineffective assistance of counsel nor does there appear to be other authority precisely on this point.[18] However, several lines of cases give us some guidance.

For example, appellants seeking relief from criminal sanctions often contend that their lawyers at trial were ineffective for failing to raise defenses related to their mental condition. Courts—including ours—have rejected these claims of ineffective assistance of counsel by observing that such defenses likely would have been counter-productive because they would conflict with the proffered defense of actual innocence.[19] *See Bieghler v. State*, 690 N.E.2d 188, 203–04

18. In a different context, we have suggested that, under certain circumstances, the simultaneous submission of conflicting defense theories could constitute ineffective assistance of trial counsel. *See Shackelford v. State*, 486 N.E.2d 1014, 1017 (Ind.1986) (holding trial counsel not ineffective for offering arguably inconsistent defense theories of self-defense and intoxication).

19. In *Shackelford*, 486 N.E.2d at 1016, we said: This Court has previously noted the difficulties that may inhere at trial when inconsistent or alternative defenses are presented by the criminal defendant. *Hester v. State*, 262 Ind. 284,

315 N.E.2d 351 (1974). This issue has generally arisen when trial counsel has presented one defense and appellant claims that another defense should have been presented. In such situations, this Court has found that the appellant was effectively represented by trial counsel when assertion of the defense which had been omitted at trial would have been inconsistent and contradictory to the appellant's own trial testimony. *Cates v. State*, 468 N.E.2d 522 (Ind.1984); *Kemp v. State*, 446 N.E.2d 1306 (Ind.1983).

(Ind.1997); *Meredith v. State*, 679 N.E.2d 1309, 1312 (Ind.1997). *See also Weeks v. Jones*, 26 F.3d 1030, 1039 (11th Cir.1994); *Rose v. State*, 617 So.2d 291, 294 (Fla.1993); *State v. Garrett*, 182 W.Va. 166, 386 S.E.2d 823, 830 (1989); *Commonwealth v. Mizell*, 493 Pa. 161, 425 A.2d 424, 426 (1981).

Another type of situation involving a conflict between the defenses of innocence and insanity caused the court to grant relief in *Selsor v. Kaiser*, 81 F.3d 1492 (10th Cir. 1996). Selsor and Dodson were charged with murder. Selsor's defense was that he was innocent; Dodson's defense was that he was insane. The state public defender was appointed counsel for both men. The trial court denied Selsor's motion that the defendants be tried separately, calling the joint representation problem "an internal problem for the Public Defender's office." The federal appeals court granted Selsor's petition for habeas corpus relief, finding that the trial court had failed to discharge its constitutional duty to "take adequate steps to ascertain whether the risk [of conflict] was too remote to warrant separate counsel." *Id.* at 1503 (quoting *Holloway v. Arkansas*, 435 U.S. 475, 484, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978)). In explaining its conclusion, the appeals court said:

> There was no inquiry into how Selsor's defense might be adversely affected by the joint representation even though the potential conflict of interest was patent. As defense counsel noted, Dodson would assert an insanity defense which required him to admit his role in the offenses, including his participation with Selsor. Selsor's defense was to deny any involvement. These inconsistent positions could color the judgment of the defense attorneys throughout the trial. An adequate consideration of the conflict would have revealed the impossibility of going forward with the joint representation.

*Selsor*, 81 F.3d at 1502–03 (footnote omitted).

We believe a third set of cases are most relevant to the problem here. Because of the difficulties inherent in conducting trials where defenses of innocence and insanity are both available, some jurisdictions, either by case law or statute, require or permit bifur-cated trials on the issues of innocence and insanity. *See generally* Debra T. Landis, Annotation, *Necessity or Propriety of Bifurcated Criminal Trial on Issue of Insanity Defense*, 1 A.L.R.4th 884 (1980). A claim of entitlement to such a proceeding was made to this court in *Hester v. State*, 262 Ind. 284, 286, 315 N.E.2d 351, 352 (1974). While noting that Ind.Trial Rule 42(B) and (C) would authorize a bifurcated trial upon such issues, our Court also identified certain problems arising in such cases. In particular, we reviewed an Arizona decision declaring unconstitutional that state's statute requiring a bifurcated trial where a plea of not guilty by reason of insanity was asserted:

> Looking to the procedural difficulty in administering bifurcated trials, the Arizona court noted that the trial court could not consider the evidence of insanity at the first trial and would thus be required to find intent solely from the circumstances connected with the offense. ' * * * The first trial then would involve only proof that an act of a criminal nature had been committed, and that the defendant committed it. In effect, this gives rise to a presumption of intent, premeditation, or malice which runs counter to the common law and constitutional concepts of criminal law. The second trial is limited solely to the question of legal insanity, the guilt of the defendant having already been determined. There is no provision, nor realistically could there be, to determine also intent, premeditation, or malice in reduction of the degree of the crime. Thus, the presumption raised in the first trial becomes an irrebuttable presumption. Such a presumption is in violation of due process, * * *.' [*State v. Shaw*,] 106 Ariz. 103, 471 P.2d [715,] 724 [ (1970) ].

We hold that although a plea of insanity may be viewed as an admission of the commission of the criminal act and may in other ways ease the State's burden of proof, it does not, in the absence of other compelling circumstances, entitle a defendant to a bifurcated trial. We do not view the defendant's alleged reason for requesting the two-stage trial as a circumstance giving rise to probable and substantial

prejudice such as required a variance from the established and normal single trial procedure.

*Hester,* 262 Ind. at 287–88, 315 N.E.2d at 353. Many jurisdictions have reached the same result. *See State v. Hightower,* 661 A.2d 948, 953 (R.I.1995); *Commonwealth v. Jermyn,* 516 Pa. 460, 533 A.2d 74, 82 (1987); *State v. Ward,* 301 N.C. 469, 272 S.E.2d 84, 87 (1980); *Leick v. State,* 131 Colo. 353, 281 P.2d 806, 811 (1955). *Contra, Holmes v. United States,* 363 F.2d 281, 284 (D.C.Cir. 1966).

At bottom, we conclude from these lines of cases that in the absence of other compelling circumstances, a criminal defendant is not subjected "to probable and substantial prejudice" when counsel does maintain both defenses.

### B

■ We find that there was a sound strategic reason for placing Wisehart's mental condition at issue in this case. Counsel was not maintaining that Wisehart was not guilty by reason of insanity but rather asserting insanity as an explanation for the most damaging evidence the State had against Wisehart's defense of innocence—Wisehart's confession. Wisehart's mental condition—his propensity for blame-taking—might explain how he could be innocent and yet confess. While counsel certainly suffered through several rough spots in employing this strategy, especially during *voir dire* and the examination of Dr. Joy, counsel's closing argument clearly, cogently and effectively employed Wisehart's mental condition to support his innocence defense.

### B–1

During closing argument, trial counsel provided a detailed discussion of how the State's circumstantial evidence did not prove that Wisehart had committed any of the crimes. Counsel then argued that the State's case rested solely on Wisehart's confession—and that confession was false, a product of Wisehart's mental illness:

There are a lot of problems with this case. What happened here was after [Wisehart] confessed, [the State] said, oh, boy, we got somebody to confess. We don't have to go any farther. That's true. They didn't really go any farther according to their evidence. They said they had the guy that did it. They didn't even really consider [Wisehart's] mental condition as any kind of a factor bearing on why he would say something if he didn't mean it. And that's the reason why the insanity defense is in front of you. We're not trying to excuse what he did, because he didn't do it. What we're trying to explain to you is why he said what he did. And there's ample evidence to show why he made these ridiculous, self-destructive comments about himself and implicated himself in a crime he didn't do . . . .

(T.R. at 2276.) Trial counsel then proceeded to repeat various testimony tending to support such theory and then also discussed Wisehart's blame-taking character with the following comments:

And then last . . . the acceptance of blame. Now is there a history of that in [Wisehart]? Yes, there is. How do we know there's a history of acceptance of blame in [Wisehart]? [Wisehart], in junior high school, according to Mr. Warmke . . . remember him, the dean of boys? . . . said he saw [Wisehart] several times. [Wisehart] would always admit to whatever he accused him of doing, whether he had done it or not. He said that. He said he knew for a fact that lots of times kids would put him up to things. But [Wisehart] wanted to be so accepted, he wanted so much to be a part of the group that he would sit there and take the blame for everybody, whether he did it or not. That's one example, and Mr. Warmke said that wasn't just one time. He remembered several instances of that. Then we go on to his behavior at Cross Roads . . . . While he was there, he exhibited that same behavior. He'd take the blame for the other kids, the kids he was close to. Somebody'd get in trouble, he'd say, I did it. Punish me for it. I'm the one who did it. So we have a history of this sort of behavior on his part.

(T.R. at 2283–84.)

Trial counsel informed the jury that the defense of insanity was not filed in order to

provide an excuse for Wisehart, but instead was filed in order to provide proof that Wisehart falsely confessed to a crime he did not commit. We find such an approach well within the bounds of effective defense strategy.

### B–2

Our determination that there was a more than adequate strategic explanation for counsel's decision to argue both actual innocence and insanity to the jury makes it unnecessary to examine in great detail Wisehart's numerous specific claims of ineffective assistance of trial counsel related to this issue. However, we do elect to address several of them.

 First, Wisehart contends that, while it may have been sound strategy to argue that Wisehart had falsely confessed due to his mental condition, the law did not require counsel to file a notice of insanity or argue that his client was insane.[20] By doing so, Wisehart maintains, counsel's performance was deficient (because he did not know insanity defense law) and prejudicial (because the jury had to deal with an inappropriately presented insanity claim). We might today conclude that a defendant would not have to file a notice of insanity and pursue an insanity defense in order to claim that he had falsely confessed due to mental illness. But this has been an unsettled area of Indiana law, at least until very recently. *See McClain v. State*, 678 N.E.2d 104, 105, 109 (Ind.1997) (holding that a notice of insanity was not required to contest the voluntariness of defendant's actions), *reh'g denied.; Barrett v. State*, 675 N.E.2d 1112, 1117 (Ind.Ct.App. 1996) (in holding that evidence of battered woman's syndrome was admissible to negate

defendant's mental state, the court did not suggest that a notice of insanity need be filed to present such evidence), *trans. denied.* Given then-existing statutory and case law, defense counsel could well have expected vigorous resistance to any effort to place Wisehart's alleged mental illness before the jury. without complying with the notice of insanity statute. *See Badgley v. State*, 226 Ind. 665, 676, 82 N.E.2d 841, 845 (1948); *Taylor v. State*, 181 Ind.App. 392, 394 n. 2, 391 N.E.2d 1182, 1183 n. 2 (1979). It was not deficient performance to proceed under the insanity notice statute.

 Second, Wisehart contends that trial counsel was ineffective for having confused the jury during *voir dire* by not articulating how Wisehart could maintain claims of actual innocence and insanity at the same time. During *voir dire*, a number of jurors frankly questioned how a defendant could claim both. For example, prospective juror Boyland indicated that he felt it was "kind of contradictory" for a defendant to maintain both insanity and actual innocence; that if he were to assert an insanity defense, "my first-hand thoughts would be that I would be admitting to the crime … any crime." (S.T.R. at 576; 577.) While there was undeniably some confusion on this score, we find that the issue was fully aired and that trial counsel took steps to exclude prospective jurors who expressed unwillingness to entertain the dual arguments.[21] We do not find that counsel's performance on this issue during *voir dire* was deficient.

 Third, Wisehart faults trial counsel's opening argument. Trial counsel's opening statement was brief and direct. The opening

---

20. At the time of the crimes at issue, the legislature defined insanity as the lack of substantial capacity either to appreciate the wrongfulness of the conduct or to conform conduct to the requirements of the law as a result of a mental disease or defect. Ind.Code § 35–41–3–6(a) (1982). Mental disease or defect was not defined except to exclude any "abnormality manifested only by repeated unlawful or antisocial conduct." Ind.Code § 35–41–3–6(b) (1982). In general, our insanity defense statute then required that for a defendant to interpose a defense of insanity, a notice of insanity had to be filed in advance of trial. Ind.Code § 35–36–2–1 *et seq.* (1982).

21. In his brief, Wisehart presents five prospective jurors' comments to demonstrate their unwillingness to accept the dual argument strategy. But four of these individuals were struck from the venire and did not serve. (Graham, S.T.R. at 199; Bruns and Fewell, S.T.R. at 350; Davidson, S.T.R. at 584.) Juror Boyland, whose comments are discussed in the text, *supra*, and also in part X–D, *infra*, was seated but only after having been challenged for cause. (S.T.R. at 577.) We acknowledge that trial counsel did not exercise a peremptory challenge with respect to Boyland but find that within the range of counsel's discretion.

argument simply stated that Wisehart was innocent and that the evidence would not show beyond a reasonable doubt that Wisehart committed the crime. Trial counsel made no reference to the insanity plea or the false confession theory. While in retrospect, it may appear that this would have been a good time to inform the jury of such theory, it would also have been logical for counsel to wait for the State to introduce the confession into evidence before attacking it.

■ In any event, we have regularly held that the decision not to make an opening statement is a matter of trial strategy and will not support an ineffective assistance of counsel claim. *See, e.g., Roche v. State*, 690 N.E.2d 1115, 1124–25 (Ind.1997); *Douglas v. State*, 663 N.E.2d 1153, 1155 (Ind.1996) (citing *Nuckles v. State*, 560 N.E.2d 660, 662 (Ind.1990)); *Miller v. State*, 541 N.E.2d 260, 263 (Ind.1989). Likewise, we hold that the content of an opening statement, absent some egregious blunder, is also a matter of strategy.

■ Lastly, Wisehart claims that counsel was ineffective in failing to present sufficient evidence to support the false confession claim. We note that the argument here is not that counsel failed to present any evidence in this regard but only that counsel failed to present enough evidence. The following evidence was presented:

1. The house parents at Crossroads, a home for emotionally disturbed children where Wisehart had resided, offered the following testimony:

> Well, [Wisehart] has always kinda the defender of the underdog, I would say. We had several little kids that would do mischievous things, and [Wisehart] ... and one little fellow in particular that [Wisehart] was just very, very fond of ... and he would ... if James got in any trouble and [Wisehart] would come and say, "Well, Mom, I was with him. I could've ... I should've stopped him. It was partly my fault. I should've stepped in," or something. But ... and he did that on several different occasions where three or four kids would get together and they'd pull some mischievous prank and [Wisehart]

would take the blame for it. "It was my idea. It was my idea." I'm not sure it always was, but that's what he would tell me. (T.R. at 1702.)

> I consider it kind of unselfish when he would give up some of his own free time to be given punishment for something that someone else really did. Especially the little guy. I keep referring to these littler kids. He was very protective over them. If they had done something and he didn't feel that they should get the punishment ... I don't know ... he would just say he did it, you know. (T.R. at 1762)

2. The dean of a school that Wisehart had attended testified that Wisehart would accept any form of discipline exercised by him even on the occasions when other children put him up to do some of the things. (T.R. at 1961.)

3. Dr. Joy, the defense's psychologist, testified that "[Wisehart] fabricates a lot of things.... I don't know that I could say specifically as to a confession, but he fabricates a lot of things and tells very elaborate stories that are not true." (T.R. at 1886.)

We find that trial counsel was not deficient in failing to present sufficient evidence in support of his false confession theory.

## C

■ Wisehart advances a second claim concerning ineffective assistance of trial counsel with respect to his mental condition. He contends that it constituted deficient and prejudicial performance for counsel not to have presented evidence of Wisehart's mental condition as a mitigating circumstance during the penalty phase of the trial. Advanced as part of this claim is the assertion that trial counsel erroneously thought that having been unsuccessful in advancing his mental condition arguments in the guilt phase, they were no longer available in the penalty phase.

At the penalty phase, all evidence from the guilt phase was incorporated by reference. In his closing argument, the prosecutor contended that by its guilt phase verdicts, the jury had rejected Wisehart's mental condition as a mitigating circumstance. In response, Wisehart's trial counsel pointed to

the guilt phase evidence of Wisehart's mental condition arguing vigorously that it should be considered as a mitigating circumstance (emphasis added):

> Each and every one of you people are going to have to make an individual choice of whether you can intentionally recommend someone die, and then we will be passing the burden on to Judge Newman and it will be his final choice to make the decision about whether Mark lives or dies. It's a very, very weighty decision we have here. We're talking about sitting down and thinking through whether we're going to kill someone, much the same as the State has been accusing Mark of doing. Did Mark sit down and rationally think through what he did in this case? *Consider the evidence. Mark has a long, long history of mental disturbance. There's no doubt about that. Now, the prosecutor says, well, that's not a mitigating factor. It is definitely a mitigating factor.* Mark was born, raised in a family, consumed by all sorts of problems around him. He is a factor, not only of his genes, but his environment. Somewhere along the line, something short-circuited in this boy. Are we to condemn him because he is a freak of nature? Are we to condemn him because there's something missing in his character that ought to be there? That there [is] something wrong with his brain? [sic]

(T.R. at 2409–10.) Later in his argument, trial counsel returned to this theme (emphasis added):

> [The prosecutor says there are] no mitigating circumstances here. *Remember all the evidence we had. We had witness after witness after witness for both the prosecutor and the State who testified about Mark's mental problems. Every last one of them did.* Now, admittedly, you rejected it as a possible mitigating factor on his responsibility for the crime, but the law allows you to consider that as to whether the sentence is proper. And for those of you who do not feel that your Christian beliefs are strong enough to consider that, consider the other. Consider whether Marks' mental condition was such that he did not commit this crime ... or that he

should not be executed because of this crime. And I think if you ... if you look at all those factors, there's only one conclusion you can reach, that it is not proper to impose the death penalty in this case.

(T.R. at 1871–72 (ellipses in original).) We conclude that trial counsel's performance at the penalty phase was not deficient for failing to place Wisehart's mental condition before the jury as a mitigating circumstance.

### III

In addition to the claims of ineffective assistance of trial counsel related to the insanity-actual innocence defenses discussed in part II, *supra,* Wisehart lodges numerous additional complaints about trial counsel's guilt phase performance that he contends denied him the effective assistance of counsel. The post-conviction court found that Wisehart was not denied the effective assistance of counsel and we agree.

### A

 As a general matter, Wisehart contends that trial counsel's lack of experience in defending a death penalty case and presenting an insanity defense was prejudicial to the defendant. Inexperience *per se* is not sufficient to make out a claim of ineffective assistance of counsel. *See Meredith,* 679 N.E.2d at 1312 (quoting *Douglas,* 663 N.E.2d at 1154) ("isolated poor strategy, inexperience, or bad tactics do not necessarily constitute ineffective assistance of counsel"). *See also United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (Supreme Court reversed a finding of ineffective assistance of counsel in a case where a young real estate lawyer who had never participated in a jury trial was appointed to represent a defendant charged with mail fraud). Here the post-conviction court found that lead counsel at trial had defended at least thirty-six felony cases, including murder and attempted murder cases, represented persons in involuntary mental health commitment proceedings, handled approximately ten criminal appeals, and attended a seminar on defending death penalty cases. The post-conviction court found that lead counsel had adequate training and experience to defend

Wisehart. The post-conviction court found that co-counsel had defended only one felony case and had no experience or training in defending death penalty cases but that this lack of experience did not prejudice Wisehart's defense. We find no inherent ineffectiveness in trial counsel's experience or lack thereof.

### B

Defendant contends that trial counsel was ineffective during pre-trial proceedings for the following reasons: (1) failing to make several motions; (2) failing to raise the issue of Wisehart's competency; and (3) being confused about the mental health issues.

### B-1

Wisehart contends that trial counsel: (1) failed to articulate adequately his need for expert assistance; (2) waited until less than three weeks before trial to file a motion to suppress Wisehart's confession; (3) failed to assert in the motion to suppress that Wisehart was impermissibly coerced to confess and that he falsely confessed; and (4) failed to request a continuance after the motion to suppress was denied.

First, Wisehart raised the denial of his motion for a private sociologist as error in his direct appeal, but we found none. *Wisehart*, 484 N.E.2d at 954. The issue is not available for relitigation here.

 Second, he makes no showing of how waiting until three weeks before trial to file this motion (which we held on direct appeal to have been properly denied, *Wisehart*, 484 N.E.2d at 954) was either deficient or prejudicial.

 Third, he alleges that trial counsel failed to assert that Wisehart was impermissibly coerced into confessing. Contrary to Wisehart's contention, we find that trial counsel made the following argument in support of what he styled a "Motion to Suppress the Involuntary Confession": "The statements sought to be suppressed were obtained as a result of psychological and mental coercion illegally directed against [Wisehart]." Moreover, during the hearing on this motion, trial counsel presented testimony of the psychiatrist which corroborated the defense theory that Wisehart was coerced into confessing. And while Wisehart alleges that counsel did not claim in the motion to suppress that Wisehart had confessed falsely or question the psychiatrists regarding the possibility of a false confession, counsel certainly elicited testimony regarding Wisehart's susceptibility to being easily influenced by others, suggesting that the confession was involuntary. We do not find counsel's performance to be deficient.

 Fourth, he suggests that trial counsel should have requested a continuance after the motion to suppress was denied. We do not find counsel's failure to request a continuance to be deficient. In fact, we see no reason why a continuance would have been necessary since counsel (based upon his performance during the suppression hearing) appeared to be prepared to present a false confession theory at trial if the confession was not suppressed.

### B-2

Wisehart next contends that trial counsel was ineffective for failing to contest the issue of Wisehart's competence. At Wisehart's competency hearing, Wisehart's counsel stipulated as to Wisehart's competence to stand trial and advised the court that all the psychiatrists' reports indicated (and Wisehart himself believed) that Wisehart was competent to stand trial. The court accepted the stipulation and asked that the record show that all the psychiatrists who examined Wisehart reported that Wisehart was competent to stand trial.[22]

 During the post-conviction hearing, Wisehart argued that circumstances indicated that he had not been competent, that trial counsel should not have stipulated to competency, and that trial counsel should have raised the issue of competency again when

---

**22.** While the reports filed by the three court-appointed psychiatrists are not in the record, the report filed by Dr. Joy (a psychologist who served as an expert witness for Wisehart) stated that

"[Wisehart] is competent to assist his attorney in his defense and to understand the charges against him." (T.R. at 95.)

such circumstances became apparent. Wisehart presented two witnesses to support this argument. First, Wisehart's trial counsel testified during the post-conviction hearing that Wisehart was "not really" able to assist him in the defense, nor was Wisehart able to understand the seriousness of the proceedings "because of his mental problems."[23] (R. at 551; 562.) Second, Wisehart presented testimony of Dr. Ryan, a clinical psychologist, who met and interviewed Wisehart in April, 1993 (ten years after Wisehart had been convicted and sentenced). Based upon an hour clinical interview and four hours of psychological testing, Dr. Ryan concluded that his best educated guess was that "[Wisehart] was still unable to function effectively, which would severely, . . ., would severely interfere with his ability to help or even participate in [Wisehart's] own defense." (R. at 2008.)

 "The standard for deciding such competency is whether or not the defendant currently possesses the ability to consult rationally with counsel and factually comprehend the proceedings against him or her." *Brewer v. State*, 646 N.E.2d 1382, 1384 (Ind. 1995) (citing *Mato v. State*, 429 N.E.2d 945, 946 (Ind.1982)). The pre-trial stipulation of trial counsel and the trial court's determination of competence were both based upon the conclusions of the three court-appointed psychiatrists. In conflict is the equivocal post-conviction statement of trial counsel and the testimony of Dr. Ryan, defendant's own expert, based on an examination conducted ten years after the time of trial. Under these circumstances, the findings of the three psychiatrists are sufficient to support the conclusion that counsel's stipulation did not constitute deficient performance.

### B–3

 Wisehart claims that trial counsel in his confusion hired a psychologist, rather than a psychiatrist. However, the record reflects that trial counsel deliberately requested Dr. Joy (a psychologist) as the expert witness. We will not second-guess counsel's strategic decision, especially without a showing of prejudice.

### C

Wisehart asserts that the following actions during voir dire constitute ineffective assistance of counsel: (1) failing to provide the jury with an articulable defense theory; (2) failing to discover the jury's receptiveness to the penalty phase theory; and (3) failing to strike at least two jurors.

 First, Wisehart contends that trial counsel was ineffective during voir dire for failing to provide the jury a cogent defense theory. Our review of the record indicates otherwise. Trial counsel adequately informed the jury of the defense theory that Wisehart was innocent, that Wisehart pled "not guilty" and that a notice of insanity was filed in order to introduce evidence regarding Wisehart's mental condition. *See* part II, *supra*. Additionally, Wisehart argues that trial counsel was ineffective during voir dire because he did not introduce to the jury the substantive factual issues of the case. This does not constitute deficient performance. *See Bannowsky v. State*, 677 N.E.2d 1032, 1034 (Ind.1997) (quoting *Von Almen v. State*, 496 N.E.2d 55, 59 (Ind.1986)) ("Questions which seek to shape a favorable jury by deliberate exposure to the substantive issues in the case are improper."); *Hopkins v. State*, 429 N.E.2d 631, 635 (Ind.1981) (disapproving use of "voir dire to implant in jurors' minds ideas about the substantive facts of the case being tried").[24]

 Second, Wisehart contends that trial counsel failed to discover the jury's receptiveness to the penalty phase theory by not preparing them for any evidence to be offered at trial. We have held that it is permissible to use voir dire to "inquire into jurors' biases or tendencies to believe or

---

23. When trial counsel was asked why he stipulated to Wischart's competence, trial counsel said that he felt Wischart was probably competent, but didn't think Wischart could conform his conduct to the standards of society.

24. *See also McCormick v. State*, 437 N.E.2d 993, 996 (Ind.1982); *Everly v. State*, 271 Ind. 687, 689, 395 N.E.2d 254, 255 (1979); *Blackburn v. State*, 271 Ind. 139, 142, 390 N.E.2d 653, 656 (1979).

disbelieve certain things about the nature of the crime itself or about the particular line of defense." *Hopkins*, 429 N.E.2d at 635. *See Bannowsky*, 677 N.E.2d at 1034 (quoting *Von Almen*, 496 N.E.2d at 59) ("jurors are to be examined to eliminate bias but not to condition them to be receptive to the questioner's position."). Our review of the record suggests that trial counsel on several occasions questioned the jurors regarding their opinions on (1) the death penalty, (2) the circumstances in which the death penalty would be justified, (3) whether they could consider mitigating factors to prevent the imposition of the death penalty, and (4) whether insanity was a mitigating factor. To the extent counsel had a duty to discover the jury's receptiveness to the penalty phase theory, we are satisfied that these questions provided a reasonable basis for doing so.

[34] Finally, Wisehart claims that trial counsel was ineffective for failing to strike at least two jurors. Our review of the record indicates that during voir dire, trial counsel challenged several jurors who (1) were strongly in favor of the death penalty under all circumstances; or (2) had a difficult time accepting psychiatric testimony; or (3) expressed concern over accepting the two alternative defense theories. While we agree that trial counsel could have probed some of the jurors in more depth to discover their ability to be fair and impartial jurors, we do not find such failure to be deficient performance. *See May v. State*, 502 N.E.2d 96, 103 (Ind.1986) (declining to find ineffective assistance of counsel when defendant simply stated that "[c]ounsel could have found a more favorably composed jury without stating any support for this contention, or for his allegation that this jury was unfairly composed"). *See also Taylor v. State*, 480 N.E.2d 924, 926 (Ind. 1985) (court stated that the decision of whether to strike panel members from the jury was a "judgment call on strategy that does not amount to ineffective assistance of counsel.").

## D

Wisehart contends that counsel was ineffective at trial for failing to (1) impeach a State's witness, (2) object to hearsay testimo-

ny, (3) object to the admission into evidence of mugshots, (4) object to testimony referring to a polygraph test, and (5) object to lay witness testimony on insanity.

## D–1

Wisehart asserts that trial counsel should have impeached Officer Fancher, a police officer involved in investigating the crimes, with Fancher's prior inconsistent statements in order to undermine the officer's credibility. At trial, Fancher testified that Wisehart had confessed that "[the victim] wouldn't let [Wisehart] in and [Wisehart] had to kill her" (T.R. at 1279). However, at the suppression hearing Fancher testified that Wisehart had stated "I didn't mean to kill her" (T.R. at 604, 608.) While the two statements are somewhat different, they are by no means inconsistent with one another such that impeachment would have been beneficial. In fact, impeachment of Fancher under these circumstances would in no way have undermined his credibility. Instead, impeachment would have provided the jury with an additional incriminating statement, thereby elevating the potential (to Wisehart's detriment) for the jury to believe Wisehart's confession. The decision not to impeach was not deficient performance.

## D–2

Wisehart next contends that trial counsel should have objected to the testimony of Detective Tracy when he testified that one of the victim's neighbors recognized Wisehart from a photo array as being present at the apartment building a few days before the crime. Wisehart argues that trial counsel should have objected on the grounds of hearsay. Hearsay is an out of court statement offered for the truth of the matter asserted. Ind.Evidence Rule 801(c). The State suggests that the testimony was offered for its inferential value of demonstrating that Wisehart was present in the apartment building on the day of the crime. Br. of Appellee at 16. If in fact this was the reason for eliciting this testimony, then it would have been inadmissible hearsay because it would have been offered for the truth of the matter asserted.

Wisehart points us to our decision in *Williams v. State,* 544 N.E.2d 161 (Ind.1989). In that case, a detective testified (apparently over objection) that, based on information he received from an unidentified informant, he included defendant's photo in a photo array to show to the victim. We found that such testimony "provided the jury with a basis for making inferences that the informant had knowledge that [defendant] committed the offense" without the defendant having an opportunity to test these inferences through cross-examination. *Williams,* 544 N.E.2d at 163. We reversed Williams's conviction.

In *Williams,* the declarant of the hearsay statement was anonymous. In this case, the declarant was known. Counsel may have concluded that Wisehart was better *off* if the declarant was not called to testify. After all, the State might have called her had he objected and the objection been sustained. (In fact, the State did not call the declarant.) The decision not to object was not deficient performance.

### D–3

▆▆▆▆ Wisehart also contends that trial counsel should have objected to the photo array on the grounds that a mug-shot was prejudicial. "Mug shots are not per se inadmissible." *Andrews v. State,* 536 N.E.2d 507, 509 (Ind.1989). They are admissible if (1) they are not unduly prejudicial and (2) they have substantial independent probative value. *Cason v. State,* 672 N.E.2d 74, 75 (Ind.1996) (citing *Splunge v. State,* 641 N.E.2d 628, 632 (Ind.1994)); *Andrews,* 536 N.E.2d at 509. The State properly argues that Wisehart has failed to show that the photo array was a "mug shot" and that nothing in the record indicates that the photo array was ever referred to or characterized as a "mug shot." Furthermore, post-conviction counsel has failed to provide us with the photo array for review. Thus, we have no basis for finding deficient performance in trial counsel's failure to object to the admission of the photo array into evidence.

25. During direct examination of Alice Newman, after she stated that she saw Wisehart reading the newspaper article regarding the victim's murder, trial counsel asked her whether she gave all of this information to any police officers and she responded in the following manner:

### D–4

▆▆▆ A key State witness at trial was Gregory Scott Johnson. During defense counsel's direct examination of Johnson's mother, Alice Newman, she remarked on her son having taken a polygraph test.[25] Wisehart argues that this created an inference that Johnson passed the polygraph exam, thereby bolstering Johnson's testimony. Wisehart further contends that it was deficient performance for trial counsel to have "elicited" this testimony from Newman. But as the dialog set forth in note 25, *supra,* indicates, Newman volunteered the information on the polygraph when answering an entirely unrelated question. As such, counsel's performance in this regard was not deficient (nor was his likely strategic decision not to seek a jury admonishment in order to avoid bringing attention to the remark, especially since the results of the exam were never disclosed).

### D–5

Wisehart contends that trial counsel should have objected when the State questioned several lay witnesses regarding Wisehart's ability to know the difference between right and wrong. He makes only a conclusory statement to the effect that such an objection would have been sustained. Consequently, he waives appellate review of this contention. Ind.Appellate Rule 8.3(A)(7). *See Canaan v. State,* 683 N.E.2d 227, 232 (Ind.1997), *reh'g denied; Clemens v. State,* 610 N.E.2d 236, 244 (Ind.1993) (appellate review waived where defendant failed to cite authority and failed to mention why counsel's failure to object was substandard performance or how he was prejudiced).

### E

▆▆▆ Wisehart claims that trial counsel was ineffective in closing argument because he improperly vouched for Wisehart's inno-

A: When my son took a polygraph test, I did say that [Wisehart] had been to the house on that Wednesday to some officer at the police station. (T.R. at 2065.)

cence and then inadvertently requested that the jury not put Wisehart in a position where his life would be taken "for something he probably didn't do." Our review of the record reveals that counsel was doing nothing more than zealously advocating his client's innocence. While counsel's phraseology might not have been the best, the thrust of his argument was clear and did not constitute deficient performance.

## IV

In addition to the claims of ineffective assistance of trial counsel discussed in parts II and III, *supra,* Wisehart also contends that counsel was ineffective for failing to provide mitigating evidence during the penalty phase of the trial. Defense counsel did not present additional evidence during the penalty phase. However, the approach taken by counsel to the penalty phase makes clear that his performance was not deficient.

Our opinion on direct appeal and our review of the record both indicate that trial counsel intended to pursue three lines of argument as to why the death penalty was inappropriate. First, relying on the evidence presented during the guilt phase, counsel planned to argue that death was inappropriate because of Wisehart's long history of mental problems. Second, relying on a criminologist and clergyman, counsel planned to argue that death was inappropriate because it was not a deterrent to crime and was the subject of religious opposition. Third, relying on the defense's psychologist and a police officer involved in the case, counsel planned to argue that death was inappropriate because other persons were involved in committing the crime.

As discussed in our opinion on direct appeal, the court did not permit counsel to call any witnesses in support of the second or third arguments. Counsel cannot be faulted for failing to present evidence on those two points. As to counsel's first argument, trial counsel presented testimony of multiple witnesses during the guilt phase as to Wisehart's history of mental problems in particular and difficult upbringing and history in general. This evidence admitted during the guilt phase was incorporated into the penalty phase for the jury's consideration. The trial court instructed the jury to consider all the evidence introduced at the trial stage together with new evidence presented during the penalty phase.

As discussed at length in part II–C, *supra,* trial counsel emphasized this mitigating evidence in his closing argument to the jury during the penalty phase. We agree with the post-conviction court's findings that the presentation of additional witnesses at the penalty phase on the issue of Wisehart's mental condition would have been cumulative. Under the circumstances of this case, when mitigating evidence has already been presented, the failure of counsel to duplicate during the penalty phase the mitigating evidence presented to the jury during the guilt phase does not constitute deficient performance. *See Schiro v. State,* 533 N.E.2d 1201, 1206 (Ind.1989) (no ineffective assistance of counsel where, because an insanity defense was raised, the defendant was able to present evidence, typically considered mitigating, during the guilt phase without reintroducing the same evidence during the penalty phase).[26]

---

26. *See also Waters v. Thomas,* 46 F.3d 1506, 1512 (11th Cir.1995) (court determined that (1) as a result of an insanity defense, counsel presented a substantial amount of mental illness mitigating evidence and "were not required to subject defense witnesses to another round of cross-examination [ ] nor were counsel required to present redundant evidence" and (2) which witnesses to call is the "epitome of a strategic decision"); *Brecheen v. Reynolds,* 41 F.3d 1343, 1361 n. 13 (10th Cir.1994) (counsel was not ineffective for failing to present additional mitigating evidence because mitigating evidence adduced during guilt phase was incorporated into the sentencing phase and the jury was allowed to consider rele-

vant mitigating evidence); *Hayes v. Lockhart,* 852 F.2d 339, 352 (8th Cir.1988) (counsel's decision not to present additional mitigating evidence regarding defendant's drinking problem was a "reasonable trial tactic, one that was based upon counsel's calculated assessment that the risk of probable harm exceeded the possible benefit that might have resulted"), *judgment vacated on other grounds,* 491 U.S. 902, 109 S.Ct. 3181, 105 L.Ed.2d 691 (1989); *Celestine v. Blackburn,* 750 F.2d 353, 357 (5th Cir.1984) (no prejudice results where counsel omits during the penalty phase evidence adequately developed during the guilt phase and additional evidence which would not have changed the jury's conclusion).

## V

In addition to the claims of ineffective assistance of counsel discussed in parts II, III, and IV, *supra*, Wisehart attacks as deficient certain aspects of counsel's performance during judicial sentencing.

■ First, Wisehart maintains that trial counsel failed to present mitigating circumstances during the sentencing hearing which would warrant a sentence less than death. As we stated in part IV, *supra*, counsel had already presented mitigating evidence during the guilt phase and discussed it during the penalty phase. Presenting this evidence again would have been cumulative. We find no deficient performance.

■ Second, Wisehart contends that trial counsel improperly conceded Wisehart's presence at the scene of the crime after vouching for his innocence during the penalty phase. During the sentencing hearing, counsel called the defense investigator as a witness. The witness testified that Wisehart admitted that he was present during the crime, but that he did not strike the victim. Wisehart alleges that this testimony is a concession by counsel that Wisehart was present during the crime. We find no deficient performance. Wisehart already confessed to the crime, thereby admitting his presence at the scene of the crime, and had been convicted of committing it. Counsel appears to have called the investigator to suggest why Wisehart deserved a sentence less than death.[27]

■ Third, Wisehart argues that counsel erred by arguing for an illegal sentence based on additional uncharged burglaries. Again, we find no deficient performance. Counsel reminded the court that when Wisehart confessed to the murder, he also admitted committing several other burglaries. As a possible way to avoid imposition of death and still provide a severe sanction, counsel suggested that Wisehart could be sentenced for those uncharged burglaries, resulting in a sentence of 50 years which could be imposed consecutively to 60 years for the murder charge. While such an approach would have faced obvious practical problems, the argument clearly constitutes zealous advocacy, not ineffective assistance of counsel.

## VI

■ In addition to the claims of ineffective assistance of trial counsel presented in parts II, III, IV, and V, *supra*, Wisehart also argues that he was denied the effective assistance of appellate counsel to which he was entitled. Just as with claims of ineffective assistance of trial counsel, we analyze claims of ineffective assistance of appellate counsel according to the two-part test announced in *Strickland*, 466 U.S. at 668, 104 S.Ct. at 2052. *See, e.g., Lowery*, 640 N.E.2d at 1048 ("standard of review for a claim of ineffective assistance of appellate counsel is identical to the standard for trial counsel"), *cert. denied*, 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995). A petitioner claiming ineffective assistance of appellate counsel must show both deficient performance and resulting prejudice. *Roche*, 690 N.E.2d at 1120–21. The failure to establish either prong will cause the claim to fail. *Id.* And where the claim is that appellate counsel was ineffective for failing to claim on direct appeal the ineffective assistance of trial counsel, the petitioner must establish both deficient performance and resulting prejudice on the part of both trial counsel and appellate counsel. *Id.* Conversely, the failure to establish either prong with respect to either trial or appellate counsel will cause the entire claim to fail. *Id.*

### A

Wisehart contends that he was denied the effective assistance of appellate counsel because of counsel's failure to raise alleged errors in numerous guilt and penalty phase jury instructions. Because we find no error in the giving of any of these instructions, we find that appellate counsel's performance was not deficient in this regard.

---

**27.** Counsel made several other arguments as to why Wisehart deserved a sentence less than death: (1) psychiatric testimony showed that Wisehart had serious mental problems (T.R. at 2443), and (2) Wisehart was in some respects like a child and it would not be proper to execute someone under these circumstances.

### A–1

■ Wisehart contends the guilt phase instructions erroneously permitted the jury to convict him of Felony Murder [28] and Burglary [29] on less than unanimous findings of guilt on the respective underlying crimes. The jury instruction on Murder charged the jury with determining whether Wisehart committed the murder while simultaneously committing or attempting to commit the crime of either Burglary or Robbery. Wisehart contends that based on the jury instruction, "it is reasonable to infer that some of the jurors could have convicted Wisehart of felony murder based on the burglary allegation while others convicted based on the robbery allegation." [30] Br. of Appellant at 109. However, the jury also found Wisehart guilty of separate counts of both Burglary and Robbery (and Theft). Thus, there was clearly a unanimous finding of guilt of Felony Murder with respect to the underlying offenses of both Burglary and Robbery. (The same analysis applies to the burglary count.)

**28.** The jury instruction on Felony Murder read as follows:

> To sustain the charge of murder, the State must prove the following:
>
> First: That the defendant was committing or attempting to commit the crime of robbery or that the defendant was committing or attempting to commit the crime of burglary.
>
> Second: That when the defendant did so, he engaged in conduct causing the death of [the victim], whether the killing was intentional, unintentional or accidental.
>
> If you find from consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty. However, if you find in your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty. (T.R. at 277.)

**29.** The jury instruction on Burglary read as follows:

> To sustain the charge of burglary, the State must prove the following:
>
> First: That the defendant broke and entered the building or structure of [the victim]; and
>
> Second: That when the defendant did do, he intended to commit the felony of Theft or the felony of Murder; and
>
> Third: That the structure was a dwelling.
>
> If you find from your consideration of all the evidence that each of these propositions have been proved beyond a reasonable doubt, then you should find the defendant guilty.

### A–2

■ Wisehart contends the guilt phase instructions erroneously failed to advise the jury of a possible "not guilty by reason of insanity" verdict on each count. Wisehart did not raise this issue in the trial court, on direct appeal, or in the post-conviction court. A claim not advanced until appellant's brief in an appeal from the denial of post-conviction relief is waived. *Canaan*, 683 N.E.2d at 235 (citing *Howard v. State*, 467 N.E.2d 1, 2 (Ind.1984)).

### A–3

■ Wisehart contends the guilt phase instructions constituted an improper judicial opinion about the weight to be accorded the testimony of certain expert witnesses. [31] First, Wisehart challenges the part of the instruction which stated that "the jury should not necessarily accept the ultimate conclusions of the experts as to the defendant's legal sanity or insanity." We have

> However, if you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty. (T.R. at 281.)

**30.** Wisehart contends that the jury should have been instructed that it could find Wisehart guilty of felony murder only after unanimously finding him guilty of both burglary and robbery, as alleged in the State's information. Br. of Appellant at 109.

**31.** Wisehart challenges the following three instructions:

> 1. ... You should consider the expert testimony in light of all other testimony presented concerning the development, adaptation and functioning of the defendant's mental and emotional processes and behavior controls and not necessarily accept the ultimate conclusions of the experts as to the defendant's legal sanity or insanity. You must decide the extent of the defendant's mental disability, if any, from a consideration of all of the evidence relating to such possible disability. (T.R. at 295.)
>
> 2. You are instructed that medical insanity is not the same as legal insanity as a bar to criminal prosecution. Not every mental aberration, defect or disease will excuse the commission of a crime. (T.R. at 296.)
>
> 3. Lay testimony on the issue of sanity is proper and may be credited over that of expert witnesses. (T.R. at 297.)

held before that "[a] jury is not obligated to believe expert testimony on the issue of insanity." *Gambill v. State*, 675 N.E.2d 668, 672 (Ind.1996) (citing *Bonham v. State*, 644 N.E.2d 1223, 1227 (Ind.1994)), *reh'g denied.* Second, Wisehart asserts that it was improper for the instruction to direct the jury that medical insanity is not the same as legal insanity and that not every mental disease or defect excuses the commission of a crime. At least at the time of Wisehart's direct appeal, there was controlling authority that these statements were a correct statement of the law. *See Montano v. State*, 468 N.E.2d 1042, 1045 (Ind.1984); *Taylor v. State*, 440 N.E.2d 1109, 1111 (Ind.1982) ("The existence of mental disease or deficiency does not ipso facto render a defendant legally insane."). Finally, Wisehart challenges the instruction which stated that lay testimony on the issue of insanity was proper and that it could be credited over expert testimony. At least at the time of Wisehart's direct appeal, there was controlling authority that this instruction was a proper statement of the law. *See Green v. State*, 469 N.E.2d 1169, 1172 (Ind. 1984); *Mayes v. State*, 440 N.E.2d 678, 681 (Ind.1982).

### A–4

 Wisehart contends the guilt phase instructions erroneously instructed the jury as to accomplice liability. Wisehart contends that these instructions were given without any credible evidence to support them. "An instruction is proper only if there

is some evidence of probative value to support it." *Dudley v. State*, 480 N.E.2d 881, 903 (Ind.1985), *judgment vacated on other grounds* by *Dudley v. Duckworth*, 854 F.2d 967 (7th Cir.1988). During trial, Wisehart elicited testimony that it was a possibility that other people may have been involved in the crime.[32] We find such evidence to be sufficient as to support an instruction on aiding, inducing or causing an offense. And, of course, it is a major thrust of Wisehart's post-conviction claim that he had accomplices. *See* part I, *supra.*

### A–5

 Wisehart contends the penalty phase instructions erroneously created a substantial possibility that the jury based its recommendation on improper aggravators. The argument here is that because several penalty phase instructions made reference to "aggravating circumstances" (in the plural) where only one was alleged, there was a substantial risk that the jury based its death penalty recommendation upon multiple aggravating factors. While some instructions referred to aggravating circumstances in the plural, those instructions were recitations of general principles. The instruction charging the jury with what it should consider in making the death penalty recommendation referred to the aggravating circumstance in the singular.[33] See *Baird v. State*, 604 N.E.2d 1170, 1180–81 (Ind.1992), where we resolved the exact same issue in a similar manner.[34]

---

**32.** During the guilt phase of the trial, Captain Moberly testified that it was a possibility that Wisehart did not act alone in committing the crime. Detective Brown testified that he felt there was a possibility that other people were involved in the crime.

**33.** The relevant instruction referred to above stated the following:
In making your recommendation concerning the death penalty, you should make the following determination:
1. That the defendant did, beyond a reasonable doubt kill the victim while committing or attempting to commit robbery and/or burglary, a determination that you have already made.
2. That, beyond a reasonable doubt, the defendant did so intentionally, and
3. That the mitigating circumstances that exist are out-weighed by the *aggravating circumstance that is alleged.*

... (T.R. at 330.) (emphasis added).

**34.** In *Baird v. State*, where the aggravating circumstance was a multiple murder and the court repeatedly referred to the aggravating circumstances in the plural, we held that "[a]ny potential confusion that could have arisen in the mind of a reasonable juror as to how many aggravating circumstances existed and how to apply the evidence of each to the separate murders would certainly have been dispelled" by the instruction given which informed the jury that the State alleged only one aggravating circumstance. *Baird v. State*, 604 N.E.2d 1170, 1181 (Ind.1992). Wisehart argues that the instruction in his case did not cure the problem because it was not as specific as the *Baird* instruction in that it did not specifically point out which aggravating circumstance was the only one that was alleged. We fail to find Wisehart's distinction significant.

### A-6

Wisehart contends the penalty phase instructions erroneously permitted the jury to consider information not introduced at trial.[35] Wisehart's argument is that the instruction's language advising the jury that it could determine the law from "whatever may be [its] source of information," the jury was allowed to consider any evidence or information irrespective of whether the judge admitted it into evidence. While perhaps susceptible of Wisehart's reading, we believe the challenged language was understood to mean that each juror could utilize his or her background, experience, beliefs and convictions in exercising his or her responsibility to determine the law under art. I, § 19, of the Indiana Constitution. *See Bivins v. State,* 642 N.E.2d 928, 946–47 n. 6 (Ind.1994). In any event, we view this language as favorable to Wisehart and, in fact, have seen appellants in other capital cases challenge the trial court's refusal to employ it. *See Fleenor v. State,* 514 N.E.2d 80, 86 (Ind.1987) (although a tendered instruction advising the jury to consider its background, experience, beliefs and convictions was rejected, another instruction was provided which conveyed the same basic message), *cert. denied,* 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988). *But see Canaan v. State,* 541 N.E.2d 894, 910–11 (Ind.1989) (a tendered instruction advising the jury to consider its background, experience, beliefs and convictions was rejected).

### A-7

Wisehart contends the penalty phase instructions erroneously misled the jury regarding the procedure for weighing the aggravating circumstances against the mitigating factors. First, he argues that because several instructions informed the jury that aggravating factors required proof beyond a reasonable doubt, the jury may have interpreted mitigating circumstances to require the same burden of proof. We have previously rejected this argument.[36] *See Roche,* 690 N.E.2d at 1127–28 (citing *Miller v. State,* 623 N.E.2d 403, 409 (Ind.1993)); *Bivins,* 642 N.E.2d at 946. Second, he argues that he was denied due process and due course of law because the trial court failed to instruct the jury that the determination of the existence of mitigating factors does not require unanimity. We have previously rejected this claim. *See Roche,* 690 N.E.2d at 1129 (citing *Harrison v. State,* 644 N.E.2d 1243, 1259 (Ind.1995)). *See also Bivins,* 642 N.E.2d at 947. Thirdly, he argues that the trial court failed to instruct the jury that it could give weight to mental and emotional evidence that did not rise to the level of an insanity finding. We have previously found the trial court's instruction that the jury "can consider as a mitigating circumstance '[a]ny other circumstance appropriate for consideration' " to be sufficient in this regard. *See Bivins,* 642 N.E.2d at 947.

### A-8

Wisehart contends the penalty phase instructions erroneously instructed the jury on the range of possible penalties. At the time of his trial, Wisehart was serving a suspended ten year sentence for Arson. He argues that the trial court should have advised the jury regarding the possible execution of this sentence.[37] This claim is similar

---

35. Wisehart challenges the following instruction:
 . . .
 The Constitution of Indiana provides that in all criminal cases, you, the jury, shall have the right to determine the law and the facts. In determining the law, it is your sworn duty to determine it correctly, and as it in fact is, whatever may be the source of your information, or the basis of your conclusion. It is your duty to consider and weigh the instructions given and if you reject them, such rejection shall not be arbitrary and without what you regard as proper and sufficient reason.
 . . .
 (T.R. at 336.)

36. Wisehart also claims that Ind.Code § 35–50–2–9(c) is unconstitutional for failing to explain the standard of proof required for mitigating circumstances. We have previously rejected this argument as well. *Roche v. State,* 690 N.E.2d 1115, 1127–28 (Ind.1997); *Bivins v. State,* 642 N.E.2d 928, 946 (Ind.1994).

37. This argument, contending as it does that the jury should have more information about sentencing alternatives to the death penalty, appears inconsistent with Wisehart's argument that the prosecutor committed misconduct by advising the jury of the maximum term of years for Murder.

to a claim raised in another capital case, *Johnson v. State*, 584 N.E.2d 1092, 1101–02 (Ind.1992). In *Johnson*, after the defendant was convicted of Felony Murder in the course of Burglary and Arson, the trial court advised the jury of the possible penalties for Murder. The defendant argued on appeal that it was error for the court not to have advised the jury of the possible penalty for Arson as well. We held that "it was not error to restrict this instruction to the more immediate potential consequences, *i.e.,* those stemming from the verdict of guilty of murder." *Id.* at 1102. The argument in support of the exercise of the trial court's discretion is even stronger here where the arson conviction was unrelated to the crimes at issue.

### A–9

 Wisehart contends the penalty phase instructions erroneously advised the jury that its verdict was a recommendation that did not bind the court.[38] Wisehart couches his argument in the terms of *Caldwell v. Mississippi*, 472 U.S. 320, 328–29, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985), where the Supreme Court held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." However, to establish a *Caldwell*-type violation, "a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Romano v. Oklahoma*, 512 U.S. 1, 9, 114 S.Ct. 2004, 2010, 129 L.Ed.2d 1 (1994) (citing *Dugger v. Adams*, 489 U.S. 401, 407, 109 S.Ct. 1211, 1215, 103 L.Ed.2d 435 (1989)); *see also Lowery*, 640 N.E.2d at 1044. This Court previously has held that it is not unconstitutional to instruct the jury that the ultimate sentencing responsibility rests with the trial judge, *Lowery*, 640 N.E.2d at 1044, because such an instruction accurately reflects the requirements of Indiana law. An Indiana jury does not impose a sentence, but instead makes a sentencing recommendation

to the judge, who in turn decides what sentence to impose.

### B

Wisehart contends that he was denied the effective assistance of appellate counsel because of counsel's failure to argue on direct appeal that the Indiana death penalty statute is unconstitutional on its face and as applied. In support of this theory, Wisehart now raises several constitutional challenges for our consideration. This Court previously has disposed of these issues adverse to his position. Because the law does not support these claims, counsel was not ineffective for failing to raise them on direct appeal.

### B–1

Wisehart alleges that Indiana's death penalty statute is unconstitutional because it does not require an independent finding of probable cause prior to subjecting a defendant to capital procedures. We recently rejected this claim in *Matheney v. State*, 688 N.E.2d 883, 904 (Ind.1997).

### B–2

Wisehart challenges several aspects of the system of aggravating and mitigating factors contained in the death penalty statute.

First, he argues that the felony murder aggravator [39] is unconstitutionally vague and overbroad and fails to meaningfully narrow the class of murderers eligible for the death penalty. This claim was also disposed of adversely to Wisehart's position in *Matheney. Id.*

 Second, he argues that the felony murder aggravator violates the double jeopardy clause and other provisions of the United States Constitution by allowing an individual to be convicted of felony murder and then allowing the State to use the predicate felony as the basis for the death penalty. We reject this argument. We are unaware of any—and Wisehart points us to no—principle of double jeopardy jurisprudence that precludes the use of a felony conviction as an aggravating

---

**38.** The trial court instructed the jury as follows: "You may recommend whether the death penalty should be imposed, although the Court is not bound by your recommendation." (T.R. at 325.)

**39.** Ind.Code § 35–50–2–9(b)(1).

circumstance to support the imposition of a particular criminal sanction.

Third, he argues that Ind.Code § 35–50–2–9(b) is unconstitutional because it fails to provide that the sentencer may consider only charged aggravating circumstances in support of a death penalty recommendation. We recently decided this issue adverse to Wisehart's position. *Matheney,* 688 N.E.2d at 905.

▪ Fourth, he argues that Ind.Code § 35–50–2–9(c) is unconstitutional because it does not require the trier of fact to consider all proffered mitigating evidence. The permissive language of the preamble of this subsection ("[t]he mitigating circumstances that may be considered under this section") and of the "catch-all" mitigator ("[a]ny other circumstances appropriate for consideration")[40] does not render optional consideration by the jury of relevant proffered mitigating evidence. *Matheney,* 688 N.E.2d at 907.

▪ Fifth, he argues that Ind.Code §§ 35–50–2–9(c)(2), (4), (5), and (6) are unconstitutionally vague and preclude the consideration of relevant mitigating evidence. The catch-all mitigator ("[a]ny other circumstances appropriate for consideration") properly allows the jury to consider all relevant mitigating evidence presented to it. *See Bivins,* 642 N.E.2d at 947.

Sixth, he argues that Ind.Code § 35–50–2–9(d) fails to limit the jury's consideration of guilt phase evidence to that which is relevant to charged aggravation and to mitigation, on the theory that this permits the jury to consider improper aggravating circumstances. This Court has rejected this claim. *Woods v. State,* 547 N.E.2d 772, 794 (Ind.1989), *on reh'g,* 557 N.E.2d 1325 (Ind.1990), *cert. denied* 501 U.S. 1259, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991).

▪ Seventh, we also reject Wisehart's unsupported claim that the statute permits the jury to consider the absence of mitigating evidence as an aggravating circumstance. *See Matheney,* 688 N.E.2d at 902; *Bivins,* 642 N.E.2d at 947

▪ Eighth, Wisehart argues that Ind.Code § 35–50–2–9(c) unconstitutionally fails to require the jury be instructed on the definition of both mitigation and "any other circumstances appropriate for consideration" and also on why the law requires consideration of mitigating circumstances. The terms "mitigation" and "any other circumstances appropriate for consideration" are not beyond the comprehension of the average lay juror, contrary to Wisehart's contention. *See Matheney,* 688 N.E.2d at 907. In any event, the trial court adequately instructed the jury as to the meaning of those terms.[41]

Ninth, he argues that the absence of prior criminal history mitigator is unconstitutionally vague. We recently rejected this claim. *Wrinkles v. State,* 690 N.E.2d 1156, 1167–68 (Ind.1998). *See also Proffitt v. Florida,* 428 U.S. 242, 257, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976), *reh'g denied,* 429 U.S. 875, 97 S.Ct. 198, 50 L.Ed.2d 158 (1976).

### B–3

Wisehart also attacks several aspects of the balancing process in which the jury engages to reach its sentencing recommendation.

First, he argues that the jury recommendation provisions of Ind.Code § 35–50–2–9[42] are unconstitutional because they fail to require the jury to find unanimously the existence of charged aggravating factors. We have previously held that the jury may recommend the death penalty only if it unanimously finds beyond a reasonable doubt the existence of at least one charged aggravator. *Bivins,* 642 N.E.2d at 947; *Fleenor,* 514 N.E.2d at 91 (citing *Williams v. State,* 430 N.E.2d 759, 765 (Ind.1982)).

---

**40.** Ind.Code § 35–50–2–9(c)(7).

**41.** "Mitigation is defined as an abatement or diminution of a penalty or punishment imposed by law. Mitigating circumstances are circumstances which do not constitute a justification or excuse for the offense in question, but which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability." (T.R. at 334.)

**42.** Ind.Code § 35–50–2–9(c) (1982); now Ind. Code § 35–50–2–9(e) and (i) (Supp.1996).

Second, he argues that the jury recommendation provisions of Ind.Code §§ 35–50–2–9 are unconstitutional because they fail to require the State to prove beyond a reasonable doubt that the aggravators outweigh the mitigators. We rejected this argument in *Bivins*, stating that "[t]he determination of the weight to be accorded the aggravating and mitigating circumstances is not a 'fact' which must be proved beyond a reasonable doubt, but is a balancing process." *Bivins*, 642 N.E.2d at 946 (citing *Daniels v. State*, 453 N.E.2d 160, 171 (Ind.1983), *vacated on other grounds*, 491 U.S. 902, 109 S.Ct. 3182, 105 L.Ed.2d 691 (1989)); *see Miller*, 623 N.E.2d at 409.

Third, he contends that the jury recommendation provisions of Ind.Code § 35–50–2–9 are unconstitutional because they provide for a mandatory death penalty upon a finding of certain facts. This Court previously addressed and rejected this claim. *Burris v. State*, 642 N.E.2d 961, 968 (Ind.1994), *cert. denied* 516 U.S. 922, 116 S.Ct. 319, 133 L.Ed.2d 221 (1995); *Bivins*, 642 N.E.2d at 946 (jury may consider mercy and is not bound to convict).

Fourth, he argues that the jury recommendation provisions of Ind.Code § 35–50–2–9 unconstitutionally fail to require the sentencing jury to provide written findings or verdict forms and fail to require the sentencing court to make specific written findings. We previously have disposed of this argument contrary to Wisehart's position. *Harrison*, 644 N.E.2d at 1259 n. 28; *Burris v. State*, 465 N.E.2d 171, 190 (Ind.1984), *cert. denied*, 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809 (1985).

Fifth, he argues that Ind.Code § 35–50–2–9(h) (1982), the automatic review provision, is unconstitutional because it does not provide for meaningful appellate review of a capital defendant's conviction and sentence. Wisehart raised this issue, and this Court rejected it, in his direct appeal. *See Wisehart*, 484 N.E.2d at 958–59.

## C

■ Wisehart argues that he was denied the effective assistance of appellate counsel when counsel failed to challenge on appeal the trial court's denial of trial counsel's motion to excuse two prospective jurors for cause during *voir dire*. Wisehart contends that the motions should have been granted because, in his view, the first of the two jurors was predisposed to sentence him to death and the second was unwilling to indulge him the presumption of innocence because of his invocation of the insanity defense. "The grant or denial of a challenge to a juror is within the discretion of the trial court," and the decision will be sustained unless "illogical or arbitrary." *Shane v. State*, 615 N.E.2d 425, 426 (Ind.1993); *Baird*, 604 N.E.2d at 1186; *Jackson v. State*, 597 N.E.2d 950, 960 (Ind.1992). We do not find the trial court's denial of the challenge for cause to be illogical or arbitrary.

■ During voir dire, prospective juror Wiand stated that she believed that in most circumstances, a person found guilty beyond a reasonable doubt of taking someone's life should be put to death.[43] This juror said that she could be fair and impartial as to the issue of defendant's guilt and that she would follow the court's instructions on various matters. Trial counsel (who also served as appellate counsel) moved to have this juror excused for cause but the motion was overruled.

■ Later during *voir dire*, prospective juror Boyland indicated that he felt it was "kind of contradictory" for a defendant to maintain both insanity and actual innocence; that if he were to assert an insanity defense, "my firsthand thoughts would be that I would be admitting to the crime ... any

---

43. Wisehart relies on *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), to support his proposition that he was denied due process as a result of Wiand remaining on the jury. *Morgan* held that if a juror who will automatically vote for the death penalty in every case is empaneled on the jury and the death sentence is imposed, the State is not entitled to execute the sentence. *Morgan*, 504 U.S. at 729, 112 S.Ct. at 2229–30. The reasoning of the court was that such a juror would be unable in good faith to consider evidence of aggravating and mitigating circumstances. *Id.*

crime. That's just my firsthand thoughts." [44] (S.T.R. at 576; 577.) This juror also said that he would think of the defendant as innocent until he heard all the evidence and that he would be particularly cautious in deciding guilt or innocence knowing that the death penalty was an issue in the case. Trial counsel (who also served as appellate counsel) moved to have this juror excused for cause but the motion was overruled.

We do not think appellate counsel's performance in failing to challenge the trial court's rulings on appeal was deficient. The first juror did not say that she would automatically vote for the death penalty and did say that she would follow the court's instructions. The second juror did not say that he would not employ the presumption of innocence and did say that he would be particularly cautious in deciding guilt because the death penalty was being sought. When the challenges for cause were rejected, trial counsel did not use peremptory challenges to strike either of these jurors despite having such challenges available. [45] Wisehart does not contend that the failure so to challenge constituted ineffective assistance of counsel. As trial counsel, appellate counsel was in as good a position as anyone to make a judgment as to whether their presence on the jury denied his client a fair trial. And courts on appeal have regularly found no trial court error under similar circumstances. *See Shane*, 615 N.E.2d at 427; *Jackson*, 597 N.E.2d at 961; *Smith v. State*, 432 N.E.2d 1363, 1368 (Ind.1982).

### D

Wisehart makes a brief set of additional arguments that his appellate counsel on direct appeal was ineffective. As we noted *supra*, a petitioner arguing ineffective assistance of appellate counsel must demonstrate both deficient performance and prejudice. *Lowery*, 640 N.E.2d at 1048, *cert. denied*, 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995). While Wisehart makes brief claims of "deficient representation on appeal," he makes no claim or showing of prejudice with respect to any of them. [46] *See* Br. of Appellant at 122–25.

### VII

■ Wisehart contends he is entitled to post-conviction relief because the political nature of the appointments of public defenders in Madison County and counsel's alleged attendant lack of independence from the trial judge justify a presumption of ineffectiveness at trial. He contends that the "Madison County Public Defender system did not provide the independent representation recommended by the American Bar Association standards, thereby saddling [defendant] with counsel who labored under conflicting duties." Br. of Appellant at 126–27. As did the petitioner in our recent opinion, *Roche*, 690 N.E.2d at 1134–35, Wisehart's claim is grounded in the dicta of *Cronic*, 466 U.S. at 659 n. 26, 104 S.Ct. at 2047 n. 26, 80 L.Ed.2d 657, that suggests that there will be certain circumstances where the court will presume the ineffective assistance of counsel without requiring the petitioner to meet his or her burden under *Strickland*. Here (as in *Roche*), the surrounding circumstances, including the actual performance of counsel at trial and on direct appeal, rebut any claim of a general presumption.

### VIII

■ Wisehart alleges that he is entitled to post-conviction relief because of misconduct on the part of the prosecutor at trial. As a preliminary matter, we note that post-conviction relief may not be sought with respect to issues that were available on direct appeal. Here Wisehart in the main asserts

---

44. This testimony was also discussed in part II–B–2, *supra*.

45. *See Shane v. State*, 615 N.E.2d 425, 427 (Ind. 1993) (court found no trial court error in denying challenge for cause but noted that "if [defendant] had been forced to accept a juror because of the lack of peremptory challenges left, an issue might have been presented").

46. Wisehart contends in this regard that appellate counsel was ineffective in his direct appeal because counsel failed to argue the false confession issue; made only skeletal arguments as to jury selection issues without including the transcript; failed to explain why a sociologist was needed; failed to establish abuse of discretion in exclusion of Bradshaw and Joy testimony; and failed to support several arguments with authority.

no basis for raising these prosecutorial misconduct claims for the first time on collateral review—he does not argue newly discovered evidence or ineffective assistance of counsel or even the ubiquitous fundamental error doctrine. But while the State argued that these claims were waived at the post-conviction court level, it elects to address them on the merits here and so we will as well.

█ When reviewing a claim of prosecutorial misconduct, we must determine: "(1) whether there was misconduct by the prosecutor; and (2) whether that misconduct, under the circumstances, placed the defendant in a position of 'grave peril' to which the defendant should not have been subjected." *Kent v. State,* 675 N.E.2d 332, 335 (Ind.1996) (citing *Smith v. State,* 516 N.E.2d 1055, 1063 (Ind.1987)); *Schlomer v. State,* 580 N.E.2d 950, 956 (Ind.1991). "The gravity of peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct." *Kent,* 675 N.E.2d at 335 (citing *Bradley v. State,* 649 N.E.2d 100, 107–8 (Ind.1995)); *Marshall v. State,* 621 N.E.2d 308, 320 (Ind.1993).

### A

█ As noted *supra,* Gregory Scott Johnson was a key prosecution witness. Wisehart contends that impermissible prosecutorial misconduct occurred when the prosecutor failed to respond completely and accurately to a motion to reveal agreements between the State and Johnson.[47] "The prosecution must disclose all agreements made with a witness which may influence a witness'[s] testimony." *McCord v. State,* 622 N.E.2d 504, 509 (Ind.1993). *See also McBroom v. State,* 530 N.E.2d 725, 729 (Ind.1988). But the duty to disclose arises only when a confirmed promise exists. *Id.*

█ Wisehart contends that an agreement existed between Johnson and the State whereby the State would dismiss pending charges against Johnson in return for his

testimony against Wisehart. We find the evidence on this contention supports conflicting inferences and so affirm the post-conviction court's determination that there were no such agreements.[48] It is clear from the record that Johnson was a usual suspect in Anderson area burglaries, often rounded up after such crimes had been committed. At the post-conviction hearing, Detective Tracy testified that Johnson had been a major participant in a church burglary which occurred shortly before the murder of which Wisehart was convicted. Charges were never filed against Johnson. Tracy testified that another officer, Detective Hay, who was in charge of the investigation, recommended that Johnson not be prosecuted after Johnson cooperated with police in the Wisehart case. However, Tracy testified that the recommendation not to prosecute may have been made because Johnson was charged with other burglaries. Tracy testified that he knew of no connection between the Wisehart murder case and the decision not to prosecute Johnson for the church burglary and Wisehart presented no testimony from Hay on this issue.

On the eve of Wisehart's trial, Johnson was arrested for public intoxication and theft by two officers, Reed and Wasilewski. Both Officer Reed and Officer Moberly testified at the post-conviction hearing that Moberly had called Reed and asked Reed to drop these charges against Johnson because Johnson was a witness in the Wisehart case. In a written report filed some months later in still another burglary case in which Johnson was a suspect, Wasilewski wrote that the public intoxication and theft charges had been dropped because Johnson "was helping on a murder." (R. at 2724; 2730.) For his part, Moberly testified that he had requested that the charges be dropped because he "felt like with Mr. Johnson being scheduled to testify and he was going to be a major witness, I felt like we didn't want to discourage him from testifying or cause or give him reason not to." (R. at 1269–70.) Moberly also testified

---

47. This issue was decided on direct appeal against Wisehart, but because some of the evidence presented to the post conviction court appears to not have been available on direct appeal, we revisit it. *Wisehart v. State,* 484 N.E.2d

949, 956 (Ind.1985), *cert. denied* 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986).

48. We acknowledge that the post-conviction court's findings on this issue are conclusory.

that he thought Johnson had reasonable defenses to the theft charge and that there had been no agreement between the State and Johnson to testify in return for dropping the charges.

Because the evidence does not point clearly and unequivocally in the direction of the existence of an agreement between the State and Johnson, we affirm the post-conviction court's conclusion that the State did not violate its disclosure obligations.[49] *See St. John v. State,* 523 N.E.2d 1353, 1356 (Ind.1988) (citing *Burgin v. State,* 475 N.E.2d 1155, 1156–57 (Ind.1985)) (". . . without concrete evidence of an understanding we have not required disclosure"). *See also McCord,* 622 N.E.2d at 509 ("When a witness hopes for leniency in exchange for favorable testimony and the State neither confirms nor denies that hope, then an express agreement does not exist.").[50]

## B

■ Wisehart raises multiple additional claims of improper behavior by the prosecutor, none of which rise to the level of prosecutorial misconduct such that Wisehart is entitled to post-conviction relief. First, Wisehart claims that the prosecution improperly misrepresented that it would have a key witness, Tony Fuqua, present for trial. While the State did indicate before trial that it would subpoena Fuqua and might or might not use him as a witness at trial, the trial court also informed defense counsel that Wisehart could subpoena Fuqua as well. The failure of the State to have Fuqua available did not preclude Wisehart from calling Fuqua as a witness. *See Jenkins v. State,* 627 N.E.2d 789, 793 (Ind.1993) (defendant had burden of calling witnesses who may have aided in the defense).

■ Second, Wisehart claims that the prosecution improperly refused to turn over the victim's autopsy report until one week before trial. As discussed *supra,* the post-conviction court found no discovery violations by the State. Our review of the record indicates that the prosecution advised Wisehart that the autopsy report was available in the police property room approximately three weeks before trial.

■ Third, Wisehart claims that the prosecution made improper arguments during the guilt phase. Wisehart claims that the prosecutor repeatedly referred to Wisehart as "scary." Our review of the record reveals that the prosecutor referred to Wisehart's alleged actions as scary, but did not call Wisehart "scary."[51] Next, Wisehart alleges

---

**49.** Because we find the prosecutor did not violate any disclosure obligations, it is unnecessary to examine whether the prosecutor's conduct placed Wisehart in a position of grave peril.

**50.** The evidence indicates that the police department did not file and dropped charges to secure the testimony of Johnson. We believe that whether or not there was a formal agreement, certainly Johnson was aware of the benefits he was receiving for providing what the police thought to be valuable testimony. We recognize that in *Kyles v. Whitley,* 514 U.S. 419, 437–38, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995), the Supreme Court stated that the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police[] [and] whether the prosecutor succeeds or fails in meeting this obligation (whether that is, a failure to disclose in good faith or bad faith, *see Brady [v. Maryland],* 373 U.S. [83], [] 87, 83 S.Ct. [1194], 1196–97, 10 L.Ed.2d 215 [(1963)]), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable." *Id.* All that being said, we still find no prosecutorial misconduct because (1) there is no concrete evidence of an

agreement between the State and Johnson and (2) the record reflects that Wisehart's counsel cross-examined both Johnson and Detective Hay on the question of Johnson's cooperation with the police, indicating that Johnson had been involved in a number of burglaries for which he was never charged. We believe that the cross-examination of these witnesses regarding this matter indicates a general awareness by Wisehart's counsel of the conduct of the police in securing Johnson's testimony. See footnote 67, *infra,* and accompanying text.

**51.** The following are statements made by the prosecutor during closing argument which Wisehart challenges:

Talking about the testimony of Toby Lamber . . . folks, to me that was scary, and I've been around a little bit, but to me for people to be putting crimes in a hat, then on a piece of paper and drawing them out and that's the one you're supposed to commit . . . that's scary. That is scary. (T.R. at 2233–34.) I find it a little bit scary and a little bit different for a person to brag about how they rolled people, how they've done what they've done to people.

that it was improper for the prosecutor to request the jury to convict Wisehart so he doesn't commit rape.[52] Wisehart contends that this statement was an improper attempt by the prosecutor to frighten the jurors into a conviction. "It is misconduct for a prosecutor to request the jury to convict a defendant for any reason other than his guilt." *Maldonado v. State*, 265 Ind. 492, 500, 355 N.E.2d 843, 849 (1976). *See also Caldwell v. State*, 508 N.E.2d 27, 28 (Ind.1987); *Johnson v. State*, 453 N.E.2d 365, 369 (Ind.Ct.App.1983). It is also misconduct "to phrase final argument in a manner calculated to inflame the passions or prejudice of the jury." *Limp v. State*, 431 N.E.2d 784, 788 (Ind.1982) (citations omitted). We agree that this argument by the prosecutor implicates these principles. However, here, where Wisehart's letter to Johnson, admitted into evidence, referred to rape, it was not beyond the bounds of permissible advocacy for the prosecutor to allude to it in closing argument. *See English v. State*, 575 N.E.2d 14, 16 (Ind.1991) (where the prosecutor characterized defendant as "experienced" due to his prior conviction, court held that "[t]he prosecutor's comment did not inject anything that was not already in evidence").

Fourth, Wisehart claims that the prosecution improperly misled the jury about the number of aggravating circumstances.[53] While Wisehart was only charged with one

aggravating circumstance—intentional murder during the course of a burglary and robbery [54]—the prosecutor told the jury during closing argument that there were two aggravating circumstances: an intentional murder in the course of burglary and an intentional murder in the course of robbery. In substance, of course, these were two separate aggravating circumstances. In this context, it was not improper for the prosecution to so argue.[55]

Fifth, Wisehart claims the prosecution improperly misled the jury regarding its duty to consider Ind.Code § 35–50–2–9(c)(6), the statutory mitigating circumstance of mental defect.[56] During closing argument, the prosecutor discussed each of the statutory mitigating circumstances. When the prosecutor reached the mitigating circumstance of mental defect, he argued that the jury's guilty verdict meant that the jury had rejected Wisehart's contention that he had acted as a result of mental disease or defect. We find nothing improper about this argument.

Sixth, Wisehart claims the prosecution improperly advised the jury during the penalty phase that if Wisehart was not sentenced to death, "he would spend only 30 years in prison." At the time of the murder Wisehart was accused of committing, the

---

I find it a little bit scary for people to brag about how they've busted guards and how they've done this and how they've done that. I find it a little bit scary when he talks to Scott Johnson in the form of these letters and says he wants a gun when he gets out. (T.R. at 2235.)

**52.** During closing argument, the prosecutor referred to the contents of a letter written by Wisehart to Johnson:

"You know, we've have a good time. We're going to have some more good times." He said, "you know, we've committed about every crime there is except rape and murder." [sic] Ladies and gentlemen of the jury in my opinion, the State had done its job in this case. He's committed murder now. Don't let him commit rape. (T.R. at 2300.)

**53.** Ind.Code § 35–50–2–9(a): The state may seek a death sentence for murder by alleging, on a page separate from the rest of the charging instrument, the existence of at least one (1) of the aggravating circumstances listed in subsection (b). In the sentencing hearing after a person is

convicted of murder, the state must prove beyond a reasonable doubt the existence of at least one (1) of the aggravating circumstances alleged.

**54.** Ind.Code § 35–50–2–9(b)(1): The defendant committed the murder by intentionally killing the victim while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnaping, rape, or robbery.

**55.** Wisehart also claims in this instance that it was ineffective assistance of counsel to not object to the prosecutor's improper statements. Because we do not find these statements to be improper, we do not find counsel's failure to object to be ineffective.

**56.** Ind.Code § 35–50–2–9(c)(6) provides that the following is a mitigating circumstance: "The defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or of intoxication."

maximum term of years for which a person convicted of murder could be sentenced was 60 years; with good time credit, such an individual could be released in 30 years. Furthermore, in a capital case, a jury may be advised as to alternative sentencing possibilities. *Fleenor v. State,* 622 N.E.2d 140, 145 (Ind.1993), *cert. denied,* 513 U.S. 999, 115 S.Ct. 507, 130 L.Ed.2d 415 (1994). The trial court accurately instructed the jury on the penalty for Murder.[57] We presume the jury followed the instruction.

Seventh, Wisehart contends the prosecution improperly argued during the penalty phase that Wisehart acted alone after tendering during the guilt phase an accomplice liability instruction. During the guilt phase, there was some evidence that Wisehart was not the sole participant in the crime.[58] As such, an accomplice liability instruction was appropriately requested. During the penalty phase, the State discussed Ind.Code § 35–50–2–9(c)(4), the statutory mitigating circumstance of relatively minor participation.[59] The prosecutor's argument against the existence of this mitigator was that there was "absolutely no evidence that others participated in the crime." While this penalty phase argument may well have been inconsistent with tendering a guilt phase instruction on accomplice liability, we find any impact harmless. The argument was made as a specific comment on the availability of the "minor participation" mitigator. Neither at the penalty phase nor in post-conviction did Wisehart contend this mitigator was available. And, of course, Wisehart predicates much of his claim for post-conviction relief on the "newly-discovered evidence"

that he was an accomplice. *See* part I, *supra.*

Eighth, Wisehart contends that impermissible prosecutorial misconduct occurred when the prosecutor improperly emphasized future dangerousness and failure to reform as reasons for imposing the death penalty when these are not valid aggravating circumstances under Indiana law because they were not included in the death penalty statute. *See* Ind.Code § 35–38–1–7 (1983). It was inappropriate for the prosecutor to advance these arguments as reasons for imposing death: a death sentence is imposed for what the defendant has done, not what he or she might do. However, we believe jurors recognize that our adversarial system of litigation will inevitably experience some overly zealous advocacy from time to time. Here, the jury was instructed, pursuant to a death sentence statute, as to what aggravating factors could be found in order to recommend a death sentence. We presume that the jury followed such instruction and find no prosecutorial misconduct.

## IX

Wisehart contends that the sentencing order was unreliable because it was based on the materially incorrect finding that there were no mitigating factors.[60] "A trial court is under no duty to deem mitigating every factor so alleged by the defendant simply because it is supported by some evidence in the record." *Bivins,* 642 N.E.2d at 952. Our review of the record indicates that the trial court did consider all the mitigation evidence presented by Wisehart, but found none of the circumstances to be mitigating.[61]

57. The instruction read as follows:
A person who commits murder shall be imprisoned for a fixed term of 40 years, with not more than 20 years added for aggravating circumstances or not more than 10 years subtracted for mitigating circumstances . . .

58. During the guilt phase of the trial, Captain Moberly testified that it was a possibility that Wisehart did not act alone in committing the crime. Detective Brown testified that he felt there was a possibility that other people were involved in the crime. *Cf.* footnote 32, *supra,* and accompanying text.

59. Ind.Code § 35–50–2–9(c)(4) provides that it is a mitigating circumstance where "the defendant

was an accomplice in a murder committed by another person, and the defendant's participation was relatively minor."

60. Wisehart asserts no basis for raising this claim for the first time on collateral review but we address it on the merits because the State on appeal does so. *See generally* part VIII, *supra.*

61. The trial court made the following findings to conclude that there were no mitigating circumstances:
(1) Evidence showed that defendant had a significant history of prior criminal conduct.
(2) There was some evidence that defendant had some emotional problems from time to

Furthermore, the trial court explained in its order why it did not find the evidence to rise to the level of mitigating circumstances within the meaning of the death penalty statute.

## X

Wisehart alleges that he is entitled to post-conviction relief because of certain errors committed before and during trial.

### A

Wisehart claims that he is entitled to post-conviction relief because the State impermissibly used Gregory Scott Johnson as its agent to acquire information against Wisehart, in contravention of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).[62] In *Massiah*, the United States Supreme Court held that a defendant's right to counsel is violated when the government intentionally creates a situation likely to induce an incriminating statement from a charged defendant in the absence of counsel.[63] *Massiah*, 377 U.S. at 206, 84 S.Ct. at 1203. Wisehart contends that Johnson's trial testimony that Wisehart told Johnson to "try to make it look like I'm crazy" falls into this category.[64]

In addressing a claim that a defendant was denied Sixth Amendment right to counsel in violation of *Massiah*, we undertake the analysis set forth in *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). There the Supreme Court stated that "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." *Id.* at 459, 106 S.Ct. at 2630 (quoting *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985)). A defendant does not make out a Sixth Amendment violation "simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Kuhlmann*, 477 U.S. at 459, 106 S.Ct. at 2630. The evidence in this case does not sufficiently indicate that the State took some deliberate action to elicit incriminating statements from Wisehart.

Our review of the record suggests that the only evidence indicating that the State engaged in improper conduct was the post-conviction testimony of Johnson and this evidence contradicted Johnson's trial testimony.[65] At trial, Johnson was a star witness for

time but there was no evidence that defendant was under the influence of extreme mental or emotional disturbance when he committed the murder.

(3) There was no evidence that the victim participated in or consented to the defendant's conduct.

(4) While there was reference to the possibility that others may have been involved in the crime, there was no proof of such involvement. Furthermore, the defendant's participation was not minor.

(5) There was no evidence that defendant acted under the substantial domination of another person.

(6) The defendant had the capacity to appreciate the criminality of his conduct, to conform his conduct to the requirements of the law, and was not suffering from a mental disease or defect.

(7) The defendant is a young man, but regardless of his youth, defendant led a life of crime and has been placed or incarcerated in several institutions.

(T.R. at 2451–55.)

62. Wisehart asserts no basis for raising this claim for the first time on collateral review but we address it on the merits because the State on appeal does so. *See generally* part VIII, *supra*.

63. In *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the defendant, along with a codefendant, was charged with possession of narcotics aboard a U.S. vessel. The defendant retained an attorney and was released on bail. Subsequently, the codefendant agreed to cooperate with the State in its continued investigation of defendant. Pursuant to this agreement, the State was able to listen to conversations between the defendant and codefendant during the course of which defendant made several incriminating statements. The statements were eventually admitted into evidence over defendant's objection.

64. We consider this statement to be incriminating because it suggested that Wisehart's insanity defense was fabricated.

65. During trial, defense counsel alluded to the fact that former inmates were ordinarily not al-

the State. While his principal value was in introducing highly damaging letters Wisehart had written him when the two were in prison,[66] he also testified that he had visited Wisehart in jail and Wisehart, aware that Johnson would be a witness, had told him, "Try to make it look like I'm crazy." (T.R. at 1118.) Johnson also testified that prior to Wisehart's arrest, he had asked Wisehart whether he had been killing old ladies. Johnson testified that Wisehart demonstrated certain body language (dropping his head and shaking it) which suggested to Johnson "that something was wrong." Despite vigorous cross-examination attempting to paint Johnson as acting out of self-interest, Johnson gave no indication that he was acting on the State's behalf.[67]

During the post-conviction hearing, Johnson testified that he was encouraged by the State to go visit Wisehart at the jailhouse in order to solicit information about the crime and that he visited Wisehart on more than one occasion. Johnson also contradicted the testimony he had given at trial as to the "[t]ry to make it look like I'm crazy" and "killing old ladies" statements.

Subsequent to Wisehart's trial, Johnson himself was convicted of capital murder in an unrelated case and sentenced to death. The same prosecutor responsible for Johnson's conviction questioned Johnson at Wisehart's post-conviction hearing and Johnson was openly hostile. There is no evidence other than Johnson's post-conviction statements to suggest that the State took any deliberate actions to elicit testimony from Wisehart. Defense counsel's cross-examination of Johnson at trial reflects that on several occasions Johnson provided the police with helpful information regarding other crimes in order to engage in plea negotiations for his own benefit.[68] The evidence in this case gives rise to an inference that Johnson obtained the allegedly incriminating statements on his own independent from any alleged police persuasion and then changed his story at the post-conviction hearing to retaliate against the prosecutor.[69]

Even if we accept at face value Johnson's testimony that the State encouraged him to solicit information from Wisehart, this testimony did not constitute a sufficient showing that the right to counsel was violated. In *Kuhlmann,* where the court found that a police officer instructed an informant to listen to the defendant for information regarding the identities of other participants, the court held that because the informant never asked the defendant any questions concerning the pending charges and only listened to the defendant's "spontaneous" and "unsolicited statements," there was no violation of the right to counsel. *Kuhlmann,* 477 U.S. at 460, 106 S.Ct. at 2630. The *Kuhlmann* test has not been met because there was no evidence as to any specific questions Johnson asked Wisehart in order to obtain the alleged incriminating statements.

---

lowed to be visitors, but Johnson never explained how he was able to visit Wisehart nor did Johnson suggest that the State encouraged such visitations.

**66.** No issue relating to the admissibility of these letters is raised in this appeal.

**67.** Wisehart's counsel attacked Johnson's credibility by questioning Johnson about (1) Johnson being a snitch for the police and (2) being investigated for numerous burglaries just before providing the police with a statement about Wisehart and letters written by Wisehart to Johnson.

**68.** *See Dodson v. State,* 502 N.E.2d 1333, 1336 (Ind.1987) (where a fellow inmate who was a trustee testified about incriminating statements made by defendant, court found no Sixth Amendment violation because the fellow inmate collected the incriminating statements on his own initiative and independent of the police). *See also United States v. Darden,* 70 F.3d 1507, 1541 (8th Cir.1995), *cert. denied* 517 U.S. 1149, 116 S.Ct. 1449, 134 L.Ed.2d 569 (1996) (where a witness agreed to cooperate with the government after the defendant made the incriminating statements, the court held that the witness was a private citizen, not a state actor, when the statements were made and thus the defendant's constitutional rights were not implicated by the government's subsequent use of the witness's testimony).

**69.** We are mindful of the fact that "proof that the State 'must have known' that its agent was likely to obtain incriminating statements from the accused in the absence of counsel suffices to establish a Sixth Amendment violation." *Maine v. Moulton,* 474 U.S. 159, 176 n. 12, 106 S.Ct. 477, 487 n. 12, 88 L.Ed.2d 481 (1985). However, Wisehart has provided us with no evidence with which to undertake such an analysis.

■ We find no evidence to support the claim either that the State improperly used Johnson as its agent or that it deliberately tried to obtain incriminating statements from Wisehart in violation of *Massiah*. And even if we assumed that the State did improperly elicit information from Wisehart by using Johnson as its agent, the "conduct does not automatically require reversal." *See Parker v. State*, 533 N.E.2d 134, 135 (Ind.1989). While the "try to make it look like I'm crazy" statement must be assumed to have had an adverse effect on Wisehart's insanity defense, it was a very minor part of Johnson's testimony. Johnson's real value to the State was in his testimony concerning the voluminous highly damaging correspondence which Wisehart sent to Johnson while they were in prison. The rest of his testimony was a sideshow.

### B

■ Wisehart alleges that he is entitled to post-conviction relief because the State's charging instrument for Felony Murder was defective.[70] Wisehart alleges he was denied notice, due process, and due course of law because the State did not allege completely the Felony Murder count and thereby narrow the class of individuals eligible for the death penalty. The purpose of an information is to provide a defendant with notice of the crime for which he is charged so that he is able to prepare a defense. *Myers v. State*, 510 N.E.2d 1360, 1366 (Ind.1987). In support of his argument, Wisehart contends that Count I, Murder, was deficient for failing to allege (1) that Wisehart broke into the victim's apartment and (2) that Wisehart intended to commit a specific felony therein. While the Murder count did not specifically allege that Wisehart broke in the victim's apartment with the intent to commit a specific felony, it did charge that Wisehart killed the victim while committing Burglary. (T.R. at 9.) Count III, Burglary, set forth the specific elements that Wisehart contends were missing in Count I. Because the information read as whole sufficiently notified Wisehart of the crimes charged, we do not find that Wisehart was denied notice, due process, or due course of law.

### C

■ Wisehart contends that he is entitled to post-conviction relief because evidence suggests that the jury impermissibly considered polygraph evidence.[71] To obtain relief on a claim of juror exposure to extrinsic evidence, an appellant must meet the three-part test in *Fox v. State*, 457 N.E.2d 1088, 1093 (Ind.1984), by showing by a preponderance of the evidence that: (1) the exposure to extrinsic material occurred; (2) the exposure is supported by the evidence; and (3) there is a likelihood that the verdict was affected. We find that Wisehart failed to meet this test.

■ During the post-conviction hearing, Wisehart introduced the January 31, 1994, affidavit of a juror in the 1983 Wisehart trial, the entire substance of which is as follows:

> During Mark Wisehart's trial, I learned that Mark Wisehart had taken a polygraph test. The jury had been brought to the courthouse, and was preparing to begin court when we were told court would not be held that day. I learned the court session had been canceled because Mark Wisehart was to take a polygraph test. I do not recall who gave me the information about the polygraph. After the polygraph, the trial continued, and I never learned the results of Mark Wisehart's polygraph test.

(R. at 2217.) [72] Wisehart does not point us to any live testimony or other evidence of any kind on this contention.

**70.** Wischart asserts no basis for raising this claim for the first time on collateral review but we address it on the merits because the State on appeal docs so. *See generally* part VIII, *supra*.

**71.** Although Wischart asserts no basis for raising this claim on collateral review, we address it as one reasonably understood to assert a claim for a new trial based on newly discovered evidence. *See* part I, *supra*, for the test used in analyzing claims of newly discovered evidence. We note that to succeed under this test, Wisehart must make a showing that due diligence was used to discover the evidence.

**72.** We acknowledge that generally references to polygraph exams are inadmissible absent a stipulation by both parties. *See Willoughby v. State*, 660 N.E.2d 570, 576 (Ind.1996) (citations omit-

We conclude that this averment, standing as it does alone, does not entitle Wisehart to post-conviction relief. Our holding in *Fox* emphasized that we may determine the effect of the extrinsic evidence only after it is proven by a preponderance of the evidence that the jury saw or heard the material complained of. *Fox*, 457 N.E.2d at 1093. The affidavit gives no indication that any other juror was aware of this information. *See Butler v. State*, 622 N.E.2d 1035, 1040–41 (Ind.Ct.App.1993) (juror learned that someone fired a gun at a prosecution witness on the morning she was supposed to testify, and the court concluded that while there was evidence to support the juror's knowledge, the defendant failed to demonstrate a substantial possibility that the jury was improperly influenced). Wisehart does not contend that any other juror provided the post-conviction court with any information concerning a polygraph test. Additionally, the affidavit presented by Wisehart gives no indication that this information affected this juror's attitude toward the case in any way. Without a showing that any of these facts had an impact on the jury verdict or were used improperly in arriving at a verdict, no claim for relief is established.

### D

 Wisehart contends that he is entitled to post-conviction relief because the prosecutor called the jury's attention to Wisehart's refusal to supply a voice exemplar.[73] Wisehart argues that this was an impermissible comment on post-arrest, post-Miranda silence in violation of *Doyle v. Ohio*. During trial, the State may not comment upon a defendant's post-arrest, post-Miranda

warning silence because that silence may be nothing more than an exercise of the Fifth Amendment right. *See Doyle v. Ohio*, 426 U.S. 610, 617, 96 S.Ct. 2240, 2244–45, 49 L.Ed.2d 91 (1976). Here the voice exemplar which Wisehart refused to give had been sought for the sole purpose of comparing Wisehart's voice with that recorded in an anonymous phone call to the police.[74] It was not sought for testimonial[75] or self-incriminating purposes. In any event, compelled production of voice exemplars does not violate the Fifth Amendment. *United States v. Prewitt*, 553 F.2d 1082, 1086 (7th Cir.1977), *cert. denied* 434 U.S. 840, 98 S.Ct. 135, 54 L.Ed.2d 104 (1977) (citing *United States v. Dionisio*, 410 U.S. 1, 15, 93 S.Ct. 764, 772, 35 L.Ed.2d 67 (1973), and *Gilbert v. California*, 388 U.S. 263, 266–67, 87 S.Ct. 1951, 1953–54, 18 L.Ed.2d 1178 (1967)). As such, commenting upon them did not violate *Doyle*.

### E

 Wisehart alleges that he is entitled to post-conviction relief because the state's offer to dismiss the death penalty should have been considered as a mitigating circumstance.[76] While Wisehart contends that the State had offered to dismiss the death penalty request for a straight-up guilty plea, the record suggests that substantial additional conditions were placed on the offer. In any event, we fail to see how evidence that the State offered to drop the death penalty charge in exchange for a guilty plea is a mitigating circumstance. Mitigating circumstances are "any aspect of a defendant's character or record and any of the circumstances of the offense that the defen-

---

ted); *Conn v. State*, 535 N.E.2d 1176, 1180 (Ind. 1989).

**73.** Wisehart asserts no basis for raising this claim for the first time on collateral review but we address it on the merits because the State on appeal does so. *See generally* part VIII, *supra*.

**74.** During discovery, the State requested Wisehart to provide a voice exemplar so that a comparison could be made with an anonymous phone call made to the police reporting the murder. Apparently, Wisehart did provide a voice exemplar, but because the sample was of poor quality, the State requested that Wisehart provide another voice exemplar. Wisehart refused

and was held in contempt of court for this refusal.

**75.** *See Pennsylvania v. Muniz*, 496 U.S. 582, 589, 110 S.Ct. 2638, 2643–44, 110 L.Ed.2d 528 (1990) (quoting *Doe v. United States*, 487 U.S. 201, 210, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184 (1988)) ("In order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information.").

**76.** Wisehart asserts no basis for raising this claim for the first time on collateral review but we address it on the merits because the State on appeal does so. *See generally* part VIII, *supra*.

dant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978). *See also Huffman v. State*, 543 N.E.2d 360, 377 (Ind.1989), *overruled on other grounds* by *Street v. State*, 567 N.E.2d 102, 105 (Ind.1991). Furthermore, provisions such as Evid.R. 408 (prohibiting the admission of offers to compromise to prove the invalidity of a claim) and Ind.Code § 35–35–3–4 (prohibiting the admission of plea agreements not approved by a court) show a strong policy promoting compromise and settlement which would be undercut by the approach Wisehart advocates.

### Conclusion

We affirm the post-conviction court's denial of Mark Allen Wisehart's petition for post-conviction relief.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

BOEHM, J., concurs except for part I–B–3; he nevertheless concurs in the result of part I for the reasons set forth in part I–B–1 and part I–B–2.